ADAMS v. SHIRK et al.

(Circuit Court of Appeals, Seventh Circuit.   May 6, 1902.)

No. 833.

1. APPEAL—RES JUDICATA.

The question of res judicata cannot be considered on appeal, it not having been in issue below.

2. FEDERAL COURTS—OBJECTIONS TO JURISDICTION—BURDEN OF PROOF.

Under Act Cong. March 3, 1875 (18 Stat. 472), providing that if in a suit in a circuit court of the United States it shall appear to the satisfaction of such court at any time that the suit does not really involve a dispute properly within said court's jurisdiction, or that the parties have been improperly or collusively made or joined to create a case cognizable by said court, it shall dismiss or remand the suit, while the question of whether there is a real diversity of citizenship need be raised in no particular manner, except that it shall be on notice, plaintiff's allegation that he is a citizen of a certain state, other than that of which defendant is a citizen, is prima facie true, and is not overcome by a simple denial in the plea in abatement that plaintiff is a citizen of such state, but defendant has the burden of showing that there is not a diversity of citizenship.

3. CITIZENSHIP—EVIDENCE.

Plaintiff is not shown to be a citizen of Illinois by his testimony: "Prior to 1896 I resided in Chicago.  Since that year my residence has been, and now is, at Indianapolis, Indiana.  I live at * * * in Indianapolis.  I have an office in Chicago.  I belong to two clubs in Chicago, and, although I am a nonresident member, I pay the dues of a resident member.  At one of the clubs I have a room.  * * *  My wife is now in California.  * * * I was in Europe last summer, and always register as being from Indianapolis."

4. MORTGAGED PREMISES—OWNER OF LEGAL ESTATE.

As against others than the mortgagee, the mortgagor is the legal owner of the estate, so that when making a lease he may reserve a covenant against assignment without written consent.

5. LEASES—DENYING LANDLORD'S TITLE.

The lessee may not deny that the landlord had a good title when the lease was made, nor the assignee of the lease deny that the landlord's title was good at the time of the assignment.

6. SAME—RECOVERY OF RENT BY GRANTEES.

Under Starr & C. Ann. St. Ill. c. 80, § 14, preserving to the grantees of the reversion the same remedies for the recovery of rent that the lessor had, the lessor and those to whom he has granted undivided interests, less than the whole, may together maintain action for the rent.

7. SAME—ASSIGNMENT—CONTRACT BETWEEN ASSIGNEE AND LESSOR.

Though a lease contain a covenant that the lessee shall not assign without written consent of the lessor, and that any assignment shall contain an assumption by the assignee of the terms of the lease, yet if, without such written consent, there is an assignment by which the assignee agrees that he accepts and assumes all the terms of the lease, and will perform all its covenants and agreements, there is a contract to this effect between the assignee and the lessor, and his grantees of interests in the premises, on their accepting rents from the assignee.

8. SAME—RELEASE OF COVENANTS BY LESSEE.

Where the assignment of a lease contains, as provided by the lease, an assumption of the terms of the lease, and an agreement to perform its covenants, such agreement, being one with the lessor, on acceptance

¶ 3. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 5. See Landlord and Tenant, vol. 32, Cent. Dig. §§ 166, 171, 176.

by him of the rent from the assignee, cannot be afterwards released by the lessee.

9. USURY—ASSUMPTION OF CONTRACT.

There is no usury in the assumption of a valid contract providing for 8 per cent. interest, though between the making and the assuming of the contract legal interest was reduced from 8 per cent. to 7 per cent.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

In March, 1891, Smith took a 99-year lease of certain real estate in Chicago from Elbert W. Shirk, in whose name the legal title then stood. The lessee agreed to pay rent, taxes, special assessments, and insurance. The lease contained covenants that the lessee would not assign without the written consent of the lessor; that, if an assignment were made, it should be evidenced by an instrument in writing containing a clause sufficient in law to the effect that the assignee personally accepts and assumes all the terms, covenants, and agreements in the lease, and will personally comply with and be bound by them; and that the lessor might declare a forfeiture for breach of any of the lessee's covenants. In December, 1895, Smith assigned the unexpired term to Adams, plaintiff in error. The assignment was evidenced by a written instrument executed by Smith and Adams, which contained the clause provided for in the lease, whereby Adams assumed all the terms, covenants, and agreements in the lease, and agreed personally to comply with and be bound by them. A written consent to the assignment was indorsed thereon, signed by Elbert W. Shirk, Milton Shirk, and Alice S. Edwards. Under these writings Adams entered and retained possession until February, 1897, when he assigned the unexpired term to Petterson. In March, 1891, when the lease was made, the realty was under mortgage, which was paid off in April, 1895. In November, 1891, Elbert W. Shirk conveyed an undivided one-third interest in the realty to his mother, Mary Shirk, an undivided two-ninths interest to his brother, Milton Shirk, and a like interest to his sister, Alice S. Edwards. This was, in fulfillment of the purpose of the purchase, in which he acted for himself and his relatives named, but there was nothing in the deed to him to indicate that others were interested in the purchase. Mary Shirk died testate in August, 1894. By her will she gave and devised all her estate, real and personal, to her three children named, as trustees, to pay debts and legacies, and to hold the residue intact as one fund, the income of which should belong to the three children for their own use, until the expiration of the trust on the death of the last survivor, when the principal should be divided per stirpes among their children then living. The will also gave the trustees full power to sell, convey, and rent real estate in which the testatrix had an interest, and to deal with her business interests at their discretion. When the lease was made, the Illinois statute authorized 8 per cent. interest, which was reserved in the lease upon delinquent installments of rent, and upon taxes, special assessments, and insurance paid by the lessor. The maximum legal rate had been reduced to 7 per cent. prior to the assignment from Smith to Adams. In July, 1899, prior to the commencement of this action, Adams procured from Smith a written release of the obligations Adams had assumed in the assignment from Smith to him. The defendants in error, Elbert W. Shirk, Milton Shirk, and Alice S. Edwards, personally and as trustees under the will of Mary Shirk, refused to recognize the assignment from Adams to Petterson; and, as citizens of Indiana, they brought this action in assumpsit to recover from Adams, a citizen of Illinois, for delinquent rent accruing in 1898 and the first quarter of 1899, and also for taxes and special assessments paid by them, together with 8 per cent. interest thereon. Adams filed pleas of the general issue, of usury, and of want of jurisdiction, on the ground that Elbert W. Shirk was a citizen of Illinois. The replication was a general denial of the special pleas. There was no conflict in the evidence. The facts hereinbefore stated were proven. Respecting Elbert W. Shirk's citizenship, he testified as a witness for defendants in error substantially as follows: "Prior to 1896 I resided in Chi-

cago. Since that year my residence has been, and now is, at Indianapolis, Indiana. I live at 439 Pennsylvania street in Indianapolis. I have an office in Chicago. I belong to two clubs in Chicago, and, although I am a non-resident member, I pay the dues of a resident member. At one of the clubs I have a room, and have had for some time. My wife is now in California with her mother. I was in Europe last summer, and always registered as being from Indianapolis." No other evidence on the subject was introduced or offered by either party.

Defendants in error had a verdict and judgment for the amount of delinquent rent, taxes, and special assessments set up in the declaration, together with 8 per cent. interest thereon. Motions for a new trial and in arrest of judgment were overruled. Under his 48 specifications of error, based on various adverse rulings to which exceptions were duly reserved, plaintiff in error presents contentions which may be grouped thus: (1) The citizenship of Elbert W. Shirk was in issue, and was not proven to be such as to give the court jurisdiction. (2) When the lease was made, Elbert W. Shirk owned only the equity of redemption. The legal title was in the mortgagee. Shirk, therefore, did not have such an estate in the land as authorized him to reserve the covenant not to assign without written consent. (3) By his conveyance to his mother, brother, and sister, Elbert W. Shirk severed the reversion and destroyed the covenant not to assign. The covenant, therefore, was not operative when Smith assigned to Adams, and Adams to Petterson. (4) The written consent to the assignment from Smith to Adams was not sufficient. The restriction was therefore waived. (5) Adams took the leasehold by privity of estate only. There never was any privity of contract between him and defendants in error. His assignment to Petterson in 1897 broke the privity of estate, and he was not liable for rents accruing thereafter. (6) Adams's covenants in the assignment from Smith to himself were for the benefit of Smith. Defendants in error were not parties to those covenants. Therefore Smith's release of Adams, made before this action was commenced, was a bar. (7) Adams's contract of assumption was usurious. (8) This action was not maintainable on the law side of the court. Defendants in error claim that all of these questions, except the first, sixth, and seventh, are res adjudicata by the decision of this court in Adams v. Shirk, 43 C. C. A. 407, 104 Fed. 54; same case on petition for rehearing, 44 C. C. A. 653, 105 Fed. 659,—which, it is said, was an action between these same parties to recover rent for 1897 under the lease and contract of assumption involved in this case. In their pleadings, however, defendants in error did not tender any issue of former adjudication.

William Burry, for plaintiff in error.

Frederic Ullmann, for defendants in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Inasmuch as no issue of former adjudication was made, tried, and determined in favor of defendants in error, the questions that are duly presented by the present record remain at large.

1. Prior to the act of March 3, 1875 (18 Stat. 472), if the necessary diversity of citizenship was duly pleaded in the declaration or bill of complaint, evidence to the contrary was inadmissible, except under a plea in abatement in the nature of a plea to the jurisdiction, and a plea to the merits was a waiver of the plea in abatement. Farmington Village Corp. v. Pillsbury, 114 U. S. 138, 5 Sup. Ct. 807, 29 L. Ed. 114; Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725. By that act it was provided:

"That if, in any suit commenced in a circuit court or removed from a state court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or a controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require."

Of the effect of this act in modifying the former procedure, the supreme court, in Hartog v. Memory, supra, said:

"Neither party has the right, however, without pleading at the proper time and in the proper way, to introduce evidence, the only purpose of which is to make out a cause for dismissal. The parties cannot call on the court to go behind the averments of citizenship in the record, except by a plea to the jurisdiction, or some other appropriate form of proceeding. The cause is not to be tried by the parties as though there was a plea to the jurisdiction, when no such plea has been filed. The evidence must be directed to the issues, and it is only when facts material to the issues show there is not jurisdiction that the circuit court can dismiss the case upon the motion of either party. If in the course of a trial it appears, by evidence which is admissible under the pleadings, and pertinent to the issues joined, that the suit does not really and substantially involve a dispute of which the court has cognizance, or that the parties have been improperly or collusively made or joined for the purpose of creating a cognizable case, the court may stop all further proceedings and dismiss the suit."

Defendants in error rely on this case to show that, since plaintiff in error filed his plea in abatement with his pleas to the merits, the evidence as to jurisdiction cannot be considered. But in Morris v. Gilmer, 129 U. S. 315, 326, 9 Sup. Ct. 289, 32 L. Ed. 690, the doctrine of Hartog v. Memory on this point was denied, and it was held that:

"The act of 1875 imposes on the circuit court the duty of dismissing a suit if it appears at any time after it is brought, and before it is finally disposed of, that it does not really and substantially involve a controversy of which it may properly take cognizance. And the statute does not prescribe any particular mode in which such fact may be brought to the attention of the court. It may be done by affidavits, or the depositions taken in the cause may be used for that purpose. However done, it should be upon due notice to the parties to be affected by the dismissal."

And in Anderson v. Watt, 138 U. S. 694, 701, 11 Sup. Ct. 449, 450, 32 L. Ed. 1078, the court said:

"Under the act of March 3, 1875, the objection to the jurisdiction upon a denial of the averment of citizenship is not confined to a plea in abatement or a demurrer, but may be taken in the answer, and the time at which it may be raised is not restricted. Although the averment as to citizenship may be sufficient, yet, if it appear that that averment is untrue, it is the duty of the circuit court to dismiss the suit; and this court, on appeal or writ of error, must see to it that the jurisdiction of the circuit court has in no respect been imposed upon."

It is manifest, therefore, that defendants in error are mistaken in claiming that the question of jurisdiction on the necessary diversity of citizenship is not before the court. But the question is not, as plaintiff in error contends, whether defendants in error have discharged the burden of proving that Elbert W. Shirk was a citizen of Indiana.

The proper allegation of jurisdictional facts, prima facie, was true. Simply to deny that Elbert W. Shirk was a citizen of Indiana would not show a want of jurisdiction. He may have been a citizen of some other state than Illinois, whereof plaintiff in error was a citizen. That Elbert W. Shirk was a citizen of Illinois was a material and necessary allegation. It was an affirmative averment, the burden of proving which, even under a proper plea in abatement, would have fallen on plaintiff in error. Sheppard v. Graves, 14 How. 505, 512, 14 L. Ed. 518; De Sobry v. Nicholson, 3 Wall. 420, 18 L. Ed. 263. Under the plea in the present case, the office of which was no broader than a motion or a suggestion to the court to protect itself from imposition, the burden most assuredly was upon the moving party. Plaintiff in error introduced no evidence on the subject. The evidence of defendants in error does not establish that Elbert W. Shirk was a citizen of Illinois, and that the circuit court was imposed upon.

2. The legal title of the mortgagee is recognized only for the benefit of the holder of the mortgage debt. Against all other persons the mortgagor is the legal owner of the estate. Barrett v. Hinckley, 124 Ill. 32, 14 N. E. 863, 7 Am. St. Rep. 331; Seaman v. Bisbee, 163 Ill. 91, 45 N. E. 208. When the lease was made to Smith, Shirk therefore had perfect authority to reserve the covenant against assignment without written consent. Furthermore, neither Smith nor Adams will be heard to deny that his landlord had good title when the lease or when the assignment was made. Cox v. Cunningham, 77 Ill. 545; Hardin v. Forsythe, 99 Ill. 312; Sexton v. Carley, 147 Ill. 269, 35 N. E. 471.

3. The Illinois statute (chapter 80, § 14, Starr & C. Ann. St.) preserves to grantees of the reversion of demised lands the same remedies for the recovery of rent that the lessor had. It is conceivable that, if Elbert W. Shirk had conveyed in severalty to various grantees different parcels of the demised land, a grantee might not enter upon his portion for breach of a covenant made with the owner of the whole. But here all the owners in common of undivided interests are seeking to recover for delinquent rents. Their right to recover is clear, if Elbert W. Shirk could have recovered, had he remained the sole owner.

4. It is said that the written consent is inefficient, because defendants in error did not execute it as trustees, but only as individuals; that defendants in error, in both capacities, accepted rent, and thereby waived the requirement of written consent to assignments; and that, the restriction being gone, Adams's assignment to Petterson was binding on defendants in error, and Adams was relieved from paying rent thereafter. The provision for written consent was for the benefit of the lessor. One can waive a safeguard for his own protection. He may thereby cut himself off from a particular defense or a particular remedy, but in other respects he creates no rights in his adversary. The claim of plaintiff in error that the acceptance of rent from him was a binding recognition of the validity of Smith's assignment to him, and of his right to assign without written consent, proves that consent by mouth or act is as effectual as consent in writing for the protection of the assignee. It is therefore immaterial whether consent, unquestionably given by act, was also duly expressed in writing. Im-

material, too, in view of the answer to be given to the next contention of plaintiff in error, is the question whether the assignment to Petterson destroyed the privity of estate between the parties to this action. The ending of the privity of estate would not affect the privity of contract, if such a relation had been created and was existing between the parties. And this brings up the central point of the case.

5. Did Adams enter into a lawful contract with defendants in error, under which he became bound personally to pay rent, taxes, and special assessments until the end of the term? In the assignment of the lease he agreed that he "accepts and assumes all the terms, covenants, and agreements in said lease contained, and will personally comply with them and be bound by them, and will keep and perform all the covenants and agreements in said lease contained." Among the covenants and agreements in the lease was one for the payment of rent, taxes, and special assessments. Smith had agreed in the lease not to assign to any one who would not assume and discharge all the obligations of the original lessee. If the assignment had not contained Adams's assumption, or if defendants in error (or arbitrators provided for in the lease) had not found Adams to be responsible, defendants in error would not have needed to accept Adams as tenant. Their acceptance of him was a good consideration for his promise to them to keep and perform all the covenants and conditions in the lease. True, Adams's promise was expressed in writing in the assignment. But it was necessary that the assignment should contain Adams's assumption, and should be submitted to defendants in error for their approval and acceptance. Their acceptance brought them into direct contractual relations with Adams. Webster v. Fleming, 178 Ill. 140, 52 N. E. 975; Springer v. De Wolf, 194 Ill. 218, 62 N. E. 542; Consumers' Ice Co. v. Bixler, 84 Md. 437, 35 Atl. 1086; Lindsley v. Brewing Co., 59 Mo. App. 271.

6. For that Adams's promise was made to defendants in error, Smith's release of Adams was as ineffectual as any stranger's.

7. The rate of interest in the lease was lawful when the lease was made. The subsequent change in the statute could not make the interest provisions usurious as between the original parties. After the change, Adams assumed and agreed to carry out Smith's contract. In one's mere assumption of another's valid obligation, there can be no usury.

8. In Illinois the right of a creditor to maintain an action at law against one who has assumed the debt has been definitely decided. Dean v. Walker, 107 Ill. 540, 47 Am. Rep. 467; Webster v. Fleming, 178 Ill. 140, 52 N. E. 975. In Union Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118,—a suit begun in the circuit court for the Northern district of Illinois,—the supreme court recognized that by the law of Illinois a mortgagee may sue at law a grantee, who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt, and, respecting the right and the remedy in the national courts, held that:

"The question whether the remedy of the mortgagee against the grantee is at law and in his own right, or in equity and in the right of the mortgagor only, is to be determined by the law of the place where the suit is brought."

In the same case, however, it was said:

"By the settled law of this court, the grantee is not directly liable to the mortgagee, at law or in equity; and the only remedy of the mortgagee against the grantee is by bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt."

Plaintiff in error insists that the part of the Hanford Case which rules that the creditor's remedy will be administered according to the law of the place (the state) wherein the suit is brought in the national court has been discredited by later cases (Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Lindsay v. Bank, 156 U. S. 485, 15 Sup. Ct. 472, 32 L. Ed. 505), holding that a cause of action inherently equitable must be brought on the equity side of the national court, although the particular right could have been asserted in an action at law in the courts of the state in which the national court is sitting. To affirm the judgment in the present case it is unnecessary, in our opinion, to deny the validity of this contention, because, for reasons hereinbefore stated, Adams's promise was made to defendants in error, who accepted and acted upon it, and because no relief was demanded or obtained that cannot be satisfied by an execution at law.

The judgment is affirmed.