## AUTO ACETYLENE LIGHT CO. et al. v. PREST-O-LITE CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3547.

**1. Courts ⟨⟩280—Burden of disproving jurisdictional allegations on defendant.**

Where a bill contains appropriate jurisdictional allegations, showing diversity of citizenship and the requisite amount in controversy, jurisdiction is affirmatively shown prima facie, and the burden of proof on an issue joined thereon rests on the defendant.

**2. Sales ⟨⟩4(2)—Contracts for sale of acetylene gas in tanks held to retain title to the tanks in the seller.**

Delivery by complainant to consumers of acetylene gas in tanks, under contracts expressly reserving title to the tanks and providing that complainant shall keep filled tanks in reserve and exchange them for empty tanks when returned without charge, except for the contents, *held* to effectively retain title to the tanks in complainant.

**3. Injunction ⟨⟩63—Will be granted to restrain encouragement of breach of contract.**

The refilling by defendant of acetylene gas tanks furnished by complainant to its customers for their use, but which remains its property, and in so doing knowingly assisting and encouraging such customers to violate their contracts under which the tanks were furnished, *held* a violation of complainant's rights, which entitled it to an injunction.

**4. Monopolies ⟨⟩17(1)—Contracts under which tanks are furnished to purchasers of acetylene gas held not in restraint of trade.**

Contracts under which complainant furnishes acetylene gas to consumers in tanks to which it retains the title, charging a fixed sum for their use, with an agreement by the consumer to return them when empty and by complainant to exchange filled tanks therefor, charging only for the contents, and that, if it fails to do so it will return a ratable part of the charge for their use, *held* not unconscionable nor in restraint of trade, in violation of Clayton Act Oct. 15, 1914, § 3 (Comp. St. § 8835c).

Appeal from the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the Prest-O-Lite Company, Inc., against the Auto Acetylene Light Company and Llewellyn Young. Decree for complainant, and defendants appeal. Affirmed.

See, also, 276 Fed. 534.

W. S. Thurstin, Jr., of Toledo, Ohio, for appellants.

Keyes Winter, of New York City (Doyle & Lewis, of Toledo, Ohio, Winter & Winter, of New York City, Frank S. Lewis, of Toledo, Ohio, and Keyes Winter, of New York City, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The Prest-O-Lite Company has for many years been engaged in generating, storing, and distributing acetylene gas for use in automobile lighting and in welding. Its gas is stored in portable steel cylinders lined with asbestos or other porous

---

material, which absorbs a quantity of acetone, which, in turn, is saturated with acetylene gas introduced under pressure; the outflow for consumption being valve-controlled. The entire package, so filled, is furnished the consumer in the first instance. When the gas is consumed, the tank is, under complainant's system, accepted at any one of a large number of agencies throughout the United States in exchange for a package fully charged by plaintiff. Its right to protection against unfair competition has been recognized and enforced in a long series of litigation relating to cylinders for automobile lighting.[1]

In 1913 plaintiff extended its service to the welding trade, and has a large number of customers, to whom it is supplying this service under a system generally similar to that relating to automobile lighting, but differing therefrom in the fact that its welding tanks are supplied (to its customers) under contracts which treat the tanks as held by the consumer as containers merely of plaintiff's gas, and on rental only; each tank bearing on the outer surface permanent legends, including the serial number of the cylinder, the date of manufacture, its weight, and the fact that it is plaintiff's property, together with the statement that the acetylene is prepared and pressed into porous substance by the plaintiff, the latter's compliance with certain governmental specifications, and that, when empty, it is to be redelivered to plaintiff. The defendant Auto Acetylene Light Company is engaged at Toledo, Ohio, in manufacturing and selling acetylene gas in tanks of the same general nature as those of complainant and in refilling the same. The defendant Young is the general manager of the corporate defendant.

The bill of complaint alleges defendant's knowledge of plaintiff's rights, including its contracts and exchange service, and charges that defendants are inducing, procuring, and assisting plaintiff's customers to violate their contracts with plaintiff, by refilling plaintiff's tanks with defendants' acetylene gas, to plaintiff's injury, as specifically set forth in the bill. An injunction was prayed against such interference with plaintiff's rights. Hearing was had upon affidavits presented by both parties, and preliminary injunctions allowed. Defendants answered, denying the jurisdiction of the court, as well as plaintiff's right to relief upon the merits, alleging especially, in substance, that plaintiff's contracts with its consumers amounted really to sales, that such consumers believed that they were thereby purchasing the tanks, and that the contracts violate the Clayton Act. The corporate defendant also asked that plaintiff be enjoined from representing to its customers that plaintiff is the owner of the tanks, and from seeking to prevent such consumers from having their tanks refilled by defendant.

In overruling a motion for rehearing of the application for preliminary injunction, upon which numerous affidavits were filed by each party, the court suggested that final submission be stipulated, "if there

[1] Searchlight Co. v. Prest-O-Lite Co. (C. C. A. 7) 215 Fed. 692, 131 C. C. A. 626; Prest-O-Lite Co. v. Davis (C. C. A. 6) 215 Fed. 349, 131 C. C. A. 491; Prest-O-Lite Co. v. Heiden (C. C. A. 8) 219 Fed. 845, 135 C. C. A. 515, L. R. A. 1915F, 945; Prest-O-Lite Co. v. Ray, 220 N. Y. 522, 116 N. E. 350; Auto Acetylene Co. v. Prest-O-Lite Co. (C. C. A. 6) 264 Fed. 810; Auto Acetylene Co. v. Prest-O-Lite Co. (No. 3546) 276 Fed. 534, this day decided by this court.

is nothing more of fact to be advanced." Counsel accordingly stipulated for such submission "upon the pleadings and affidavits heretofore filed and the record herein." The final decree, which is the subject of this appeal, was thereupon entered, enjoining defendants from interfering with plaintiff's system of exchange, causing such welding service contracts to be violated, procuring the delivery of plaintiff's exhausted tanks to any one other than plaintiff for refilling or otherwise, from receiving or refilling such tanks or damaging the same, and from dealing in or exchanging plaintiff's welding tanks.

[1] 1. Jurisdiction. The fifteenth paragraph of the bill asserts that the value of plaintiff's business of distributing acetylene gas through its service system and its contracts, and the value of plaintiff's contracts with its customers, as well as the amount in controversy, exceed $5,000, exclusive of interest and costs. The answer denied generally the allegations of this paragraph. The bill also alleged that plaintiff was a corporation organized under the laws of New York and a citizen and resident of that state, that the corporate defendant was organized under the laws of Ohio and was a citizen and resident of that state, and that both defendants were citizens and residents of the Northern district of Ohio; jurisdiction being claimed on account of this diversity of citizenship. The answer disclaims knowledge or information as to whether plaintiff has the corporate organization and citizenship alleged, and for lack of knowledge thereof denies the same. The bill of complaint was sworn to upon knowledge and belief; the answer, on belief. The affidavits are silent upon both questions of jurisdiction.

Passing the question whether the submission of the case upon the affidavits amounted to an admission that there were no controverted questions of fact as to jurisdiction, the burden of proof was upon defendants as to whatever issue was presented respecting the amount in controversy. Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 335, 27 Sup. Ct. 529, 51 L. Ed. 821. Not only is there no apparent reason in principle for distinguishing, as respects burden of proof, between allegations of plaintiff's residence and citizenship and the amount in controversy, but upon express authority we think the burden on defendants as to the former question as well. Adams v. Shirk (C. C. A. 7) 117 Fed. 801, 803, 55 C. C. A. 25; Hill v. Walker (C. C. A. 8), 167 Fed. 241, 243 et seq., 92 C. C. A. 633; Nichols v. Cleveland (C. C. A. 6), 247 Fed. 731 and note at 733, 159 C. C. A. 589; Foster's Fed. Practice (4th Ed.) vol. 2, p. 960.[2] Apart, therefore, from the fact that the assignments of error do not raise the question of jurisdiction, we think defendants precluded from asserting in this court the defense of lack of jurisdiction, which, indeed, seems never to have been brought to the actual attention of the District Court. It would, however, be our duty to dismiss the suit upon our own motion, if it

[2] See, in this connection, Chase v. Wetzler, 225 U. S. 79, 85 et seq., 32 Sup. Ct. 659, 56 L. Ed. 990; Roberts v. Langenbach (C. C. A. 6) 119 Fed. 349, 352, 56 C. C. A. 253; Detroit, etc., Ry. Co. v. Kimball (C. C. A. 6) 211 Fed. 633, and note at page 635, 128 C. C. A. 565.

satisfactorily appeared that it does not involve a controversy within the jurisdiction of the District Court. Judicial Code, § 37 (Comp. St. § 1019).

But such is not the case. Upon the face of the pleadings jurisdiction is, prima facie, affirmatively shown. Adams v. Shirk, supra, 117 Fed. at p. 805, 55 C. C. A. 25. Not only would there otherwise seem no reason to question that plaintiff is a citizen of New York, in view of the express and sworn allegation of the bill and its denial only for lack of knowledge, but in the case of this plaintiff against these same defendants, heard in the court below and reviewed here (264 Fed. 810 [No. 3354]), the bill expressly asserts that the plaintiff is "a corporation organized and existing pursuant to the laws of the state of New York, and is a citizen of said state"; the answer in terms admits "the corporate capacity of the plaintiff herein," which normally means its corporate capacity as stated in the bill.

As to amount or value in dispute the same result must be reached. As said in Bitterman v. L. & N. Ry. Co., 207 U. S. 205, 225, 28 Sup. Ct. 91, 98 (52 L. Ed. 171, 21 Ann. Cas. 693) the substantial character of this averment is "to be tested, not by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business to be protected and the rights of property which the complainant sought to have recognized and enforced. Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 336." It is manifestly impossible for any one to state accurately in advance the actual pecuniary loss which would result to plaintiff through the alleged threatened injuries. Griffith v. Vick Co. (C. C. A. 6) 272 Fed. at pp. 248, 249. The evidence in this case generally as to the nature and extent of plaintiff's business makes it appear not improbable that the business sought to be protected is worth much more than the jurisdictional amount of $3,000, and, indeed, that the threatened acts of defendants might reasonably be expected to cause damage to plaintiff in excess of that sum.

[2] 2. Does plaintiff own the tanks? Its written agreements with consumers in plain terms declare that the tanks are not sold, but remain plaintiff's property. They recite that plaintiff is engaged in manufacturing and distributing Prest-O-Lite gas, consisting of dissolved acetylene compressed and stored in uniform steel cylinders, to be used for welding and other purposes; that after a certain use the acetylene becomes exhausted, and that other changes from wear and tear occur, making it impracticable and unsafe for others than the original manufacturer to refill the tanks; that it is necessary that plaintiff hold tanks in reserve while the empty cylinders are being retested, repaired, and refilled, in order to obtain continuous and uninterrupted service. There is express declaration that for the reasons recited it is intended that the title to the cylinders should remain in plaintiff; that in consideration of the consumer's payment as rental of $25 or $50 (dependent on the size of tank), plus an exchange fee later mentioned, plaintiff shall deliver to the consumer at any of its branches or operating plants east of the state of Colorado a given number of tanks of a described style filled with acetylene gas, and shall

hold at the consumer's disposal (or that of the holder of the cylinders) reserve tanks necessary to make immediate exchanges.

It is provided (1) that the tank shall be redelivered to plaintiff whenever it becomes exhausted of gas, plaintiff thereupon immediately delivering to the consumer (or to the holder of the redelivered cylinder), not the same tank, but a standard tank of similar size and style, regardless of the condition in which the surrendered tank might be at that time through ordinary wear and tear, unavoidable accident, or act of God; (2) that in such exchange no payments shall be made plaintiff at greater rate than the lowest current price charged by it for exchanges in similar quantity in the locality where the tank issued shall be used, such exchange price being based on the number of cubic feet of acetylene gas contained in the tank; (3) that, if plaintiff unreasonably refuses to issues its tanks as agreed, it shall pay the consumer (or his assignees) an amount equal to the sum paid upon the original issue of the tank, less 5 per cent. for each year the agreement shall have run, but in no case less than 50 per cent. of the original payment; (4) the customer is given authority, through transfer of the tank, to assign all his rights therein.

[3] There is convincing evidence that defendants were actively assisting and encouraging consumers to violate their contracts with plaintiff in having Prest-O-Lite tanks filled by defendants, instead of returning them to plaintiff for that purpose, and with knowledge that they are stamped as plaintiff's property. This is plainly an invasion of plaintiff's rights, unless its contracts with its customers amounted to sales of the tanks, or are void, because unconscionable when made, or for violation of the Clayton Act. We think the contracts under which the tanks were issued are plainly incapable of an interpretation as intended to pass plaintiff's title to the tanks, and that consumers would not be justified in thinking otherwise.

[4] 3. In our opinion plaintiff's contracts cannot be declared unconscionable. It is not open to defendants to raise this question, unless in the right of consumers. The substance of the showing (so far as satisfactory) which may be thought to affect the question of unconscionableness is, we think, this: Plaintiff has no depot at Toledo; its nearest station being at Detroit, which is about 60 miles away. To send cylinders back and forth by rail takes time. The defendants do business at Toledo, and there is testimony on the part of several of plaintiff's customers that defendants' service would be more economical, prompt, adequate, and satisfactory than the given consumer was then able to obtain from plaintiff, and that, but for the provisions of the consumer's contract with plaintiff, and the restraining order issued in this cause, such consumer would have its tanks refilled by the defendant company. It satisfactorily appears that plaintiff, so far as its own action is concerned, meets the demands of its customers with reasonable promptness; its uniform practice has been, on receipt by mail of an exchange order, together with bill of lading for the returned empty tanks, immediately to ship a corresponding number of filled cylinders without waiting for the receipt of the empty ones; the customer thereby receiving the former practically as soon as plain-

tiff receives the latter. In the case of the customer most prominently mentioned in the record it affirmatively appears that the return shipments were in most instances made on the day the bill of lading was received from the consumer, and in no case later than the following day.

We do not understand it to be claimed that plaintiff has ever had a depot at Toledo, or nearer than at Detroit. Plainly, the fact that it is now more convenient for certain customers at or near Toledo to do business with defendants has no tendency to impugn the conscionableness of the contracts when made. Presumably the agreements would not have been made, unless at the time regarded by the consumers as for their interests. The consumers are not obliged to surrender all their rights under their contracts with plaintiff, in case they no longer wish the latter's service. They have an absolute right to transfer their rights to others, who thereby acquire all of the rights of the original consumer. Nor are they forbidden to buy acetylene gas from other dealers, so long as they do not use plaintiff's containers therefor. Nor can it be said that there is anything necessarily unconscionable in the exacting of the initial payments of $25 or $50 (dependent upon the size of the tank), in view of the provision for the return of a part thereof in the contingency before stated, the testimony that the fees mentioned are based upon tank depreciation, repairs, destruction, and replacement (there being testimony tending to show that the expected average life of a tank is about 10 years), as well as interest and taxes on investment in cylinders held in reserve, together with the fact that these payments are said to be below the market value of the respective sizes of tanks—competitors being said to sell those of equal size for $85 and $110, respectively. This testimony is not satisfactorily overcome by the testimony of defendant Young of his belief that the fees so charged by plaintiff as rent are in excess of actual value of the tanks, and that they cost plaintiff less than $25 and $50, respectively, and that the defendant named loans such tanks to large consumers of gas without any other charge than the regular price for refilling, at the same time selling his gas at the same or lower prices than charged by plaintiff. Plaintiff is not bound to do business without profit, nor is the conscionableness of the contracts to be tested by the course defendants see fit to take for purposes of competition.

4. The important question is whether the contract between plaintiff and its customers violates section 3 of the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730; U. S. C. S. § 8835c), which, so far as important here, makes it unlawful to lease "goods, wares, merchandise, machinery, supplies, or other commodities" on the condition, agreement, or understanding that the lessee shall not use the supplies of a competitor of the lessor, where the effect of such lease or condition, agreement, or understanding may be "to substantially lessen competition or tend to create a monopoly." If the transaction were an absolute sale of the tank, any restriction whatever upon its use would be void, independently of the Clayton Act. Motion Pictures Patents Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Ford Motor Co.

v. Union Motor Sales Co. (C. C. A. 6) 244 Fed. 156, 156 C. C. A. 584. The contract in substance forbids the customer to use in the tank any acetylene gas except that manufactured and packed by plaintiff.

In considering whether the Clayton Act is violated, two questions suggest themselves: First, whether the contract effects a lease of a tank; and, second, whether the refilling of the tanks with gas amounts to using or dealing in "supplies" within the meaning of the act. These two questions are closely interrelated. In our opinion, both must be answered in the negative. Plainly no given tank is leased. Under the contract any tank, of one class or the other, is in the first instance delivered to the customer. This tank is to be returned when empty. The same tank is not then returned to the customer (and may never be), but another tank of the same class is returned, refilled, and so on to the end of the service. The customer has no interest in any particular tank, except while filled and in his possession, and then only because it is the container of the gas, which cannot otherwise be stored and delivered to the customer. The plaintiff holds at the disposal of its customers, in the course of the exchange service, its entire stock of reserve tanks.

The typical case of supplies, as in the Mimeograph Case (Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880), is not presented. The dominant characteristic of the contract is the furnishing of acetylene gas.[3] It is more proper to say that the delivery of the storage tank as a package or container is merely incidental to the furnishing of the gas than that the former is the subject of a lease and the latter a supply for a leased package. Acetylene gas cannot be bought, sold, or delivered in the market in the way that ordinary merchandise and "supplies" are sold and delivered. Practically and commercially it can be delivered only by filling the package with gas compressed therein, a circumstance which differentiates it from supplies as the term is ordinarily used. The case presented is sui generis, and no case on all fours with it has been found.

Nor are we impressed that the contracts in question substantially or unreasonably lessen competition or tend to create a monopoly. Not only is there no suggestion of agreement between competing companies, through division of trade or regarding price, but the record shows a highly active competition between plaintiff and defendants, no stifling of which can be suggested, unless in the bare fact that the customer under contract with plaintiff is more apt, other things being equal, to obtain its gas from plaintiff than from a competitor. The case presents some, although not a perfect, analogy to the so-called pump and tank cases,[4] where it is held that a requirement that dealers distribute only the loaner's gasoline from leased devices is not an unfair method of competition, nor does it substantially lessen competition. Some meas-

[3] See, in this connection, Prest-O-Lite Co. v. Ray, supra, 220 N. Y. at p. 526, 116 N. E. 350.

[4] Standard Oil Co. v. Fed. Trade Com'n (C. C. A. 2) 273 Fed. 478; Canfield Oil Co. v. Fed. Trade Com'n, 274 Fed. 571, decided by this court June 29, 1921.

ure of support for our conclusion is found, also, in Curtis Publishing Co. v. Federal Trade Commission (C. C. A. 3) 270 Fed. 881.

In our opinion the instant case is not brought within either the letter or the spirit of the Clayton Act.

The decree of the District Court is accordingly affirmed.

