## NICHOLS v. CITY OF CLEVELAND.

(Circuit Court of Appeals, Sixth Circuit.   January 8, 1917.)

### No. 2933.

1. COURTS ☞366(8)—DECISIONS OF STATE COURT—SPECIAL LEGISLATION—VALIDITY.

Act Ohio April 5, 1893 (90 Ohio Laws, p. 100, § 1), which was limited to cities of the second grade of the first class, and to a period of seven years' duration after its passage, after creating a board of park commissioners, authorized the board to appropriate, enter upon, and condemn for public use in the name of the city any property for enlarging any park owned by the city, etc. Later sections authorized the board to borrow money and issue bonds. At that time the city of Cleveland was the only municipality of the state falling within the classification "cities of the second grade of the first class." Act Ohio April 6, 1900 (94 Ohio Laws, p. 517), also limited to such cities, and providing for such a board of park commissioners, and conferring on them such powers, as well as the similar Act Ohio April 16, 1900 (94 Ohio Laws, p. 670). was declared unconstitutional by the Ohio Supreme Court, as violating Const. Ohio. art. 2, § 26, declaring that all laws of a general nature sha'll have a uniform operation throughout the state, and article 13, § 1, forbidding special acts conferring corporate powers. *Held*, that since the act of April 5, 1893, and that of April 6, 1900, are practically identical, the decision of the Ohio Supreme Court holding the later act unconstitutional is applicable in testing constitutionality of the earlier act.

2. COURTS ☞366(11)—PRECEDENTS—FEDERAL COURTS.

In such case, the decision of the Ohio Supreme Court must be accepted by a federal court as decisive of the unconstitutionality of Act April 5, 1893, and the consequent invalidity of a condemnation proceeding begun under that act, since the decision, although rendered after the institution of such proceeding, was based on decisions of the same court rendered prior to the enactment of Act April 5, 1893.

3. JUDGMENT ☞650—CONCLUSIVENESS—MATTERS DECIDED.

After reversal and remand of its judgment in condemnation proceedings brought under Act Ohio, April 5, 1893, the probate court sustained a demurrer to the city's application for condemnation and dismissed the proceeding. The court of common pleas reversed the judgment and remanded the proceeding, and its action was sustained by the Supreme Court several years after that tribunal had declared unconstitutional almost identical legislation. *Held*, that the judgment of the common pleas was not a final judgment to which error would lie, and hence, in the absence alike of any necessity for the Ohio Supreme Court to pass upon the validity of Act April 5, 1893, and of any showing that it intended to determine such a question, the judgment of the Ohio Supreme Court cannot be regarded as declaring the validity of Act April 5, 1893.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. EMINENT DOMAIN ⟨key⟩242—AUTHORITY—CONDEMNATION.**

Condemnation by a board of municipal park commissioners created under an unconstitutional statute cannot, when questioned in ejectment, be upheld on the ground that they were de facto officers, whose acts were not subject to collateral attack.

**5. EMINENT DOMAIN ⟨key⟩268—CONDEMNATION—RIGHT TO POSSESSION.**

Under Gen. Code Ohio, §§ 3686, 3695, authorizing municipal corporations to have assessed the value of property sought to be condemned, and, on paying the amount into court and giving bond, to take permanent possession, thus compelling the owner to look only to recovery of compensation, a city, which took possession of land, cannot, though it paid into court the amount awarded upon the condemnation of land, defeat an action by the owner to recover possession; the statute under which the condemnation proceedings were had being unconstitutional, and the judgment in condemnation having been reversed.

**6. JUDGMENT ⟨key⟩562—CONCLUSIVENESS—MATTERS CONCLUDED.**

An Ohio city, by its board of park commissioners, applied under an unconstitutional law to condemn land, a judgment of the probate court assessing compensation was reversed by the court of common pleas, and thereafter a judgment of the probate court, sustaining a demurrer to the application and dismissing the application, was reversed by the court of common pleas, and the proceeding remanded. That tribunal's action was in turn sustained by the circuit court and the Supreme Court. Thereupon the then owner commenced in the court of common pleas a suit to enjoin the city from further proceedings in the probate court, or interfering with her possession on the ground of the invalidity of the statute. Judgment was rendered in the common pleas for the city, and an appeal to the circuit court was dismissed, on the ground the suit was one in ejectment, and that it could be reviewed on error only. *Held* that, in view of its two previous judgments remanding the cause for further proceedings, the common pleas court must have regarded the case as pending in the probate court, and plaintiff as having an adequate remedy at law in the probate court proceeding; and since in these circumstances it was not open to the common pleas to issue the injunction asked, the judgment of that court was not, under the rule that a decree does not bar a second suit between the parties, unless the controversy was decided on its merits, a bar to a subsequent action in a federal court by the owner to recover possession by reason of invalidity of Act April 5, 1893.

**7. ESTOPPEL ⟨key⟩93(1)—EQUITABLE ESTOPPEL.**

In such case, where the validity of the statute depended on the classification, burdened as it was with the limitations placed thereon by this statute, the city could not base an estoppel on possession secured or expenditures made on the faith of any settled rule as to municipal classification, subsequently changed; for, although the rule was changed, even the former rule condemned such limitations upon classification as were contained in the act under which the condemnation proceeding was begun.

**8. ESTOPPEL ⟨key⟩93(1)—EQUITABLE ESTOPPEL.**

In such case, as the condemnation would be a taking without due process of law, and the condemnation was actively resisted by the owner or her predecessor, save during a period of inactivity for which the city was equally responsible, no estoppel can be based on the city's expenditures, etc.

**9. EMINENT DOMAIN ⟨key⟩268—RECOVERY OF POSSESSION—CONDITIONS.**

In such case, as the city might, under Gen. Code Ohio, §§ 3677, 4053, 4054, 4060, acquire the property by condemnation, judgment for recovery of possession should not be carried into execution, unless the city should fail within a reasonable time to institute proceedings, under presently existing statutes, to condemn the property; jurisdiction being retained to compel prompt payment of compensation.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Action by Viola M. Nichols against the City of Cleveland. There was a judgment of dismissal, and plaintiff brings error. Reversed and remanded, with directions.

Viola M. Nichols brought suit September 19, 1912, for recovery of specific real property, alleging that ever since March 6, 1895, the city of Cleveland had kept her out of the possession, and also excluded her from the rents, issues, and profits, and refused to account for or pay any part of them; that the rents, issues, and profits and the damages for withholding the property amount to $25,900; and praying judgment for this sum and for delivery of possession.[1] The first defense the city relies on in its answer comprises the following undisputed facts:

(1) Under a statute of Ohio enacted April 5, 1893, a condemnation proceeding was begun in the name of the city against Jesse Nichols (predecessor in title of plaintiff) in the Cuyahoga county probate court, August 17, 1894, to assess compensation for the land in question. This was in pursuance of a resolution passed on the 10th of that month by the city's board of park commissioners appropriating the land, 4.658 acres, for public park purposes. The proceeding resulted in a verdict in favor of the owner for $4,850, and judgment overruling motion for new trial was entered on the verdict, December 8, 1894. The city paid this amount into court, gave in addition an approved bond in the sum of $4,000, and took possession of the land, March 6, 1895. This judgment was reversed by the Cuyahoga court of common pleas, November 20, 1896. and the cause was remanded to the probate court for another trial. Nothing further was done in the cause until October, 1903, when the probate court of its own motion ordered the case to be set down for hearing. Nichols thereupon withdrew his answer and filed a demurrer to the city's application, upon the grounds among others (a) that the statute under which the condemnation proceeding was brought expired by its own limitation in the year 1900, and (b) that this statute was unconstitutional and void. The demurrer was sustained and the application dismissed. Upon the city's petition in error the common pleas court reversed this action of the probate court, February 21, 1905, and remanded the cause for further proceedings. The common pleas judgment was affirmed by the circuit court of Cuyahoga county, without report, January 29, 1906, and this judgment was affirmed by the Supreme Court of Ohio without report, February 18, 1908 (77 Ohio St. 641. 84 N. E. 1130); and upon error to the Ohio Supreme Court the case was dismissed by the Supreme Court of the United States for want of jurisdiction, March 13, 1911 (220 U. S. 602, 31 Sup. Ct. 716, 55 L. Ed. 604). Meanwhile, after paying the amount of the original judgment into court and taking possession of the property (March 6, 1895). and before such dismissal by the Supreme Court, the board incorporated the property into its park system and made large expenditures in improving it for park purposes. It should be added that the answer in terms presents an issue to the effect that plaintiff and her predecessor in title failed to protest against such acts of the city or to question them "in any competent tribunal" prior to March 22, 1911, and alleges that plaintiff is in consequence estopped to maintain the present action.

[1] It should be stated that the petition contains appropriate allegations of diversity of citizenship, but these allegations are denied by the answer. Plaintiff testified that she was "a citizen of the state of New York," and no testimony appears to the contrary. We do not think jurisdiction can rightfully be denied on this state of the record. Detroit M. & T. S. L. Ry. Co. v. Kimball, 211 Fed. 633, 635, 128 C. C. A. 565 (C. C. A. 6); Hill v. Walker, 167 Fed. 241, 245, 92 C. C. A. 633 (C. C. A. 8); and see Chase v. Wetzlar, 225 U. S. 79, 85, 32 Sup. Ct. 659, 56 L. Ed. 990. The fact may be added, though it is not controlling, that counsel for the city make no contention against jurisdiction.

(2) The second defense relied on by the city in substance is: Plaintiff commenced an action against the city of Cleveland in the Cuyahoga common pleas, March 22, 1911, alleging her ownership of the property in question, the enactment of the statute, and passage by the park board of the resolution under which the appropriation proceeding mentioned in the first defense was brought; also the commencement of the proceeding and its progress down to and including the action of the Cuyahoga common pleas court in reversing the judgment entered in the probate court for $4,850 and remanding the cause to that court for another trial, and the fact that the board had taken possession of the property; alleging further that the property was on the tax duplicate at a valuation of more than $58,000, that it was worth more than $60,000, that plaintiff and her predecessor in title had "for a long time" paid the taxes thereon, and that no compensation had been paid to the plaintiff for the premises; thereupon enumerating the later proceedings taken upon the demurrer to the city's application in the probate court, the reversal thereof in the common pleas, the affirmance of such judgment of reversal in the circuit court, and the affirmance of the action of that court in the Supreme Court of Ohio; also alleging that the city was about to apply to the probate court to call a jury to assess compensation for appropriation of the land, and that it would do so unless restrained by order of court; that the statute under which the proceeding was commenced was invalid and void under specified provisions of the Constitution of Ohio; that the statute had expired by limitation in the year 1900, and that the city had no authority to carry on such appropriation; that the action of the board of park commissioners was void because of the unconstitutionality of the statute creating the board; that the action of the city in taking plaintiff's property was without due process of law and contrary to section 1 of the Fourteenth Amendment; that if the appropriation proceeding were continued it would cause plaintiff irreparable injury. The prayer was for a temporary injunction, and upon final hearing for a permanent injunction, to prevent the city from taking further proceedings in the action to appropriate the land, from interfering with plaintiff's possession of the property, and for general relief.

It is further alleged in this defense that the city filed answer joining issue; that the cause was heard and finally determined by the common pleas court, June 20, 1911, in favor of the city of Cleveland; that judgment was entered accordingly; and that it has ever since been and now is wholly unreversed, and in full force and effect.

The only matter that need be noticed in the reply is that plaintiff admits filing "a certain petition" in the common pleas, but denies that "the copy set forth in said answer is a true, full, and correct copy of the same," though it is to be noted that the answer purports to set out only the substance of plaintiff's petition and that no copy of it appears in the record.

It is stipulated that Jesse Nichols conveyed the property to plaintiff by quitclaim deed of October 31, 1904, recorded August 16, 1905, by a general warranty deed of July 19, 1907, recorded July 20, and by a corrected deed of March 21, 1911, recorded March 22d, and that by an instrument of assignment dated January 22, 1909, he sold and transferred to Gordon C. Nichols, Jesse Nichols, Jr., and Viola M. Nichols all his right, title, and interest to the judgment and the money due thereon in the case of the city against him in the Cuyahoga probate court, which assignment was on the next day filed among the papers of the case; still it is not claimed that any of the assignees mentioned in this instrument ever received any of the money. It is further stipulated that the original appropriation proceeding is "still pending" in the Cuyahoga probate court, and that "no new award of compensation has been made therein."

In disposing of the case below the trial judge made several findings, and among them that the premises continued upon the tax duplicate of Cuyahoga county, and that plaintiff and her predecessor in title had paid taxes thereon until that time, and, believing that plaintiff still had the right to pursue in the proceedings pending in the probate court "any remedy or remedies" she might have, dismissed the petition, without passing upon any of the other defenses of the city. The plaintiff prosecutes error.

Guthery & Guthery, of Cleveland, Ohio, for plaintiff in error.

Ben B. Wickham and W. S. Fitzgerald, both of Cleveland, Ohio, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The facts set out in the statement give rise to several difficult questions. In the first place, the proceeding begun in the Cuyahoga probate court to assess compensation for the property condemned was founded upon an Ohio statute enacted April 5, 1893, which in terms was limited (a) to "cities of the second grade of the first class," and (b) to "a period of seven years" duration from and after its passage (90 Ohio Local Laws, § 1, p. 100, and section 21, p. 106). Under the statutory classification then prevailing the city of Cleveland was the only municipality of the state to which the act was applicable, since that city, as was generally known, was the only one with the requisite population which had taken the necessary statutory proceedings to be advanced to the "second grade of the first class." 1 Bates' Ann. Stat. (2d Ed.) §§ 1547, 1549, 1619; and see State ex rel. Sheets v. Cowles, 64 Ohio St. at 178, 180, 59 N. E. 895. The statute in terms provided that in cities of this grade and class—or, practically interpreted, in the city of Cleveland—there should be a board of park commissioners, composed of two existing city officials and of three city electors, to be appointed by the sinking fund trustees, or, if no such body, by the common pleas court of the county in which the city is situated. The statute plainly conferred corporate power; the varied phases of such power need not be enumerated here. Section 7 empowered the board of park commissioners to—

"appropriate, enter upon and condemn for public use, and hold and possess on behalf of and in the name of such city any property for enlarging any park or parks now owned by such city, and for establishing such public park or parks, park entrances and park driveways, as in the opinion of such board of park commissioners it may be necessary from time to time to establish, either within or without the limits of such city."

The power so bestowed was to be exercised by resolution of the board declaring its intention and the necessity to appropriate the property. It was made the duty of the corporation counsel, upon receiving a certified copy of the resolution, to apply in the name of the city either to the court of common pleas or the probate court of the county to impanel a jury to assess compensation in the statutory mode for appropriating private property by municipal corporations. The compensation adjudged to any owner and the costs and expenses of the proceeding were to be paid out of park funds, for which special provision was made. Sections 10 and 11 empowered the board to borrow $1,000,000 and to issue therefor and sell interest-bearing bonds in the name and upon the credit of the city, and also annually to levy taxes upon the real and personal property returned on the grand duplicate to pay the interest on the bonds, and to certify the levies to the county auditor.

The board of park commissioners was appointed, and it thereupon adopted the resolution under which the appropriation proceeding was begun and heard in the Cuyahoga probate court. Later the board was empowered to secure further funds to develop the park system so authorized. A statute was passed April 27, 1896 (92 O. L. p. 639) and another on April 26, 1898 (93 O. L. p. 695), each vesting power in the board to borrow $1,000,000 for park purposes, and to issue and sell interest-bearing bonds, and to levy taxes in a manner similar to that prescribed in the first statute.

It will be recalled that the power of eminent domain vested in the board in terms extended to property "either within or without the limits" of the city. It is to be observed, also, that section 8 authorized the board—

"to take charge of, control and improve any public road, street, alleyway or grounds of any kind, * * * for the purpose of a park entrance or park driveway, with the consent of the proper municipal authorities or of the other corporation, or public officers or authorities owning or having charge thereof. * * *"

Section 9 gave the board power—

"to vacate or close up within the limits of any park or parks, any and all public roads and highways * * * which may pass through, divide or separate any lands selected or appropriated by it for parks. * * *"

Section 4 vested power in the board—

"to make arrests for misdemeanors committed within the precincts of any park, park entrance or park driveway under their management and control, whether within or without the limits of the city, or for the violation of any rules, regulations or ordinances established by said board or city council for the government of said parks."

Section 6 empowered the board to establish and uniform a park police force and to invest the force with power—

"to preserve the peace, and enforce such rules and regulations and ordinances as the board or city council may enact and it is hereby authorized to adopt for the government of said parks."

It is particularly to be noticed that the legislation for this park enterprise was not completed by the enactments before pointed out. At the expiration of the seven years' period for which the first statute mentioned (Act April 5, 1893) was enacted, another statute on the same subject was passed (April 6, 1900). That statute was also limited to "cities of the second grade of the first class," though not in point of duration, and it provided for a board of park commissioners composed of five electors of the county. The commissioners were in the first instance to be appointed by the judges of the circuit court and the probate judge of the county, for terms of one, two, three, four, and five years respectively; at the expiration of their several terms the commissioners were to be chosen by the electors, and the statute (section 1) accordingly provided that the first election should take place on the first Monday of April, 1901. The new board, like the old one, was in terms clothed with the power of eminent domain; in short, the two statutes were in all respects material here substantially alike (94 O. L. p. 517).

[1] It is urged that the first statute, the one of April 5, 1893, was violative of two distinct provisions of the Constitution of Ohio, namely, section 1, art. 13, forbidding the General Assembly to pass any "special act conferring corporate powers," and section 26, art. 2, providing that "all laws, of a general nature, shall have a uniform operation throughout the state." It was distinctly held that these provisions were violated by the other act mentioned, the one of April 6, 1900, as also by another of the same general character passed April 16, 1900 (94 O. L. p. 670), in State ex rel. Sheets v. Cowles, 64 Ohio St. 162, 59 N. E. 895) before cited; the syllabus of the decision reading:

"The act of April 6, 1900, entitled 'An act to provide a board of park commissioners and to provide for the acquisition of grounds for parks, etc., in cities of the second grade of the first class' (94 O. L. 517), and the act of April 16, 1900, supplementary thereto (94 O. L. 670), are void because repugnant to section 1 of article 13 of the Constitution and to section 26 of article 2 of the Constitution."

The suit was in quo warranto. The material parts of the act of April 6, 1900, and the substance of the supplementary act, are set out in the report. In view of the similarity of the two acts of present concern, the one of April 5, 1893, and the other of April 6, 1900, we do not see why the decision is not equally applicable to both. There can be no difference in principle between the limitation to seven years in duration of the first act, and the limitation requiring the plan of electing members to the park board under the second act to commence on the first Monday of April (1901) next succeeding the passage of the act (Cowles Case, 64 Ohio St. 180, 59 N. E. 895); and the other features of the two acts—as, for example, the provisions making them operative in Cuyahoga county, both within and without the city of Cleveland, giving to the board authority to control, improve, and vacate roads, and conferring upon the board distinct police powers and control—are to all intents and purposes identical. The Cowles decision shows plainly enough that it was the uniting of these features with the restriction of the act of April 6, 1900, to "cities of the second grade of the first class," rather than the latter provision alone, which rendered the act obnoxious to the Ohio Constitution; indeed it was said in allusion to the old doctrine of classification: "The present case is to be decided in deference to that doctrine and to the decisions upon which it rests." 64 Ohio St. 179–180, 59 N. E. 897, 898.[2] The combined effect of associating the other features mentioned with the old classifying words appears to have been the vice of the act of April 6, 1900, and this would seem to have been true also of the act of April 5, 1893; in a word, the Cowles decision alone justifies the conclu-

[2] The court did not find it necessary to determine in that case how it regarded the use of the old classifying words alone. This was done later and with reference to other and different statutes. State ex rel. Knisely v. Jones, 66 Ohio St. 453, 64 N. E. 424, 90 Am. St. Rep. 592; State ex rel. Atty. Gen. v. Beacom, 66 Ohio St. 491, 64 N. E. 427, 90 Am. St. Rep. 599. As a result of these latter decisions a new system of municipal classification was enacted October 22, 1902 (96 O. L. pp. 20, 106), and this system is still maintained (2 Ann. Ohio Gen. Code, § 3497 et seq.).

sion that such an association of limitations was opposed to any judicially recognized scheme of municipal classification. Further, the statutes so affecting Cleveland were apparently essential parts of a unitary park system; and it hardly is conceivable that the one of April 5, 1893, was valid, and that of April 6, 1900, invalid, under the same Constitution.

[2] We are therefore convinced that the Cowles decision must be accepted as decisive of the unconstitutionality of the act of April 5, 1893. If it be said that the case is not controlling here, since it was decided after the appropriation proceeding was begun, the answer is that the decision was rested on the rule of cases decided prior even to the enactment of the law on which the proceeding was based. This fact renders the Cowles decision binding upon this court. Peters v. Broward, 222 U. S. 483, 492, 493, 32 Sup. Ct. 122, 56 L. Ed. 278.

[3] In reaching this conclusion we bear in mind the contention of counsel for the city that the Supreme Court of Ohio subsequently declared the validity of the act of April 5, 1893. The basis of this is the reversal by the common pleas of the judgment rendered in the probate court in 1903 sustaining Jesse Nichols' demurrer to the city's application. It will be borne in mind that the common pleas judgment was affirmed by the circuit court, and the circuit court judgment by the state Supreme Court. There are several reasons why we cannot think the Ohio Supreme Court intended in that proceeding to pass on the validity of this statute. Its affirmance of the circuit court occurred seven years after the decision in the Cowles Case; and counsel's contention ignores the identity of the two statutes and the improbability that opposed decisions would have been rendered in respect of them. Moreover, the contention overlooks the nature of the common pleas judgment and the apparent effect of its affirmance. The common pleas reversal was not a final judgment to which error would lie. The effect of the judgment was to overrule the demurrer sustained by the probate court. This did not exhaust the remedy of either party below; it did not prevent a judgment in the probate court; and such a judgment might have been satisfactory to both parties. It is of course to be remembered both that the judgment of the common pleas was simply to remand the cause for further proceedings, and that the final judgment of the probate court upon the verdict fixing compensation for the land had been reversed long before and the case remanded for another trial. It follows that the common pleas judgment in effect overruling the demurrer might have been affirmed by the circuit court, and the action of that court affirmed by the Supreme Court, without considering, much less determining, the constitutional validity of the statute or otherwise disposing of the case finally. These views are through analogy strengthened by rulings of the Ohio Supreme Court in respect of appropriation proceedings instituted by private, as distinguished from municipal, corporations. State v. Judges, 69 Ohio St. 372, 377, 378, 69 N. E. 659; S. & I. R. R. Co. v. Patrick, 7 Ohio St. 170, 172; and see Tol. Ann Arbor & N. Mich. Ry. Co. v. Tol. & Mich. Belt Ry. Co., 6 Ohio Cir. Ct. 521. It is true that the statute involved in those cases required the common pleas, upon reversal of

the probate court, to retain the cause for trial and final judgment (Ohio Rev. St. § 6438, now section 11066, Ohio Gen. Code); but as regards the question of finality of a judgment of the common pleas, like the one involved in the instant case, we see no difference in principle between such a provision to retain the cause and a requirement to remand it to the probate court. This is fairly deducible from Bridge Co. v. Magruder, 63 Ohio St. 455, 473, 474, 59 N. E. 216, which was under consideration in State v. Judges, supra, and in which the common pleas, having entered an interlocutory judgment reversing a judgment of the probate court, was reversed for rendering a final judgment dismissing the supplemental and amended petition. The interlocutory character of the common pleas judgment now in issue is further shown by the statutory provisions then in force. They entitled either the municipality or the owner of the property to prosecute error to appropriation proceedings as in other civil actions, or likewise to appeal, after the value of the property had been assessed. 1 Bates' Stat. (6th Ed.) § 1536—114, now sections 3695, 3696, Ohio Gen. Code. It would therefore seem that, in the absence of a subsisting assessment of compensation, the common pleas could not in a municipal appropriation proceeding, any more than in one instituted by a private corporation, render a judgment, which was consistent with completing the appropriation, to which error would lie; in other words, such a judgment was to be "construed as being subject to a condition that the proper compensation be first ascertained and paid." Grays Harbor v. Coats-Fordney Co., 243 U. S. 251, 255, 256, 37 Sup. Ct. 295, 61 L. Ed. 702; Southern Ry. Co. v. Postal Telegraph Co., 179 U. S. 641, 642, 643, 21 Sup. Ct. 249, 45 L. Ed. 355. Hence in the absence alike of any necessity to pass upon the validity of the statute (of April 5, 1893), and of any showing that either the Supreme Court or the circuit court intended to determine that question, we cannot assent to counsel's contention.

[4] However, it is in effect urged for the city that plaintiff cannot be heard to question the constitutional validity of the act. The theory is that the park commissioners were de facto officers, and that their acts as a board in condemning the property are not open to collateral attack. This is to assert that the owner of private property may not dispute the claimed right of a municipal board to exercise the power of eminent domain. It needs no citation of authority to show that the rightful investment of such power is essential to the taking of private property in invitum. It would be a strange, and certainly an arbitrary, rule that would forbid an owner to protect his property rights through challenge of the constitutional validity of the only statute relied on to justify the exercise of such a power as that of eminent domain. In Zanesville v. Gaslight Co., 47 Ohio St. 1, 29, 23 N. E. 55, it was held in favor of the city that:

"Whenever an incorporated company, in any action, asserts a right against another person based upon an assumed franchise or power, the person against whom the right is so asserted may, as a defense, deny the existence of such franchise or power."

Surely a municipality may not be accorded, and an individual refused, the right to deny the existence of the asserted power; and,

despite the claim of counsel to the contrary, the rule so laid down makes no such distinction. Nor is there any rational or valid distinction between the right to deny the existence of such a power in a private corporation and the right to deny it in a municipal corporation; for as respects either class of corporations it is but a delegated power, and any asserted grant of the power must be strictly construed regardless of the corporate agency seeking to exercise it (Railway Co. v. South, 78 Ohio St. 10, 12, 13, 84 N. E. 418; Society Perun v. Cleveland, 43 Ohio St. 481, 498, 3 N. E. 357; Atkinson v. M. & C. R. R. Co., 15 Ohio St. 21, 33; Currier v. Marietta & Cincinnati R. R. Co., 11 Ohio St. 228, 231); and, moreover, any rule that, in the absence of estoppel, would prevent an owner from setting up the defense of unconstitutionality of the law upon which the appropriation is based would be to deprive him of his property without due process of law (Portland Ry. Light & Power Co. v. City of Portland [C. C.] 181 Fed. 632, 633). It may be added that the only case relied on by the city in this behalf (State v. Gardner, 54 Ohio St. 24, 42 N. E. 999, 31 L. R. A. 660) is clearly inapplicable.

[5] What is just shown furnishes an answer to another claim made in behalf of the city. It is in effect insisted that, in spite of the unconstitutionality of the statute on which alone the proceeding is rested, a municipality, unlike a private corporation, is entitled to have the value of the property assessed, pay the amount into court and, giving such additional bond as the court may require, take permanent possession and control of the property, and thus compel the owner to look only to recovery of compensation. Reliance for this contention is placed on sections 2250 and 2253, Smith & B. Rev. Stat. (now sections 3686 and 3695, Ohio Gen. Code); but it is too plain for argument that the statutory proceedings so authorized were provided in contemplation of a constitutionally valid, not invalid, statute vesting in the condemning body the power of eminent domain.

[6] In the next place the city, under the second defense of the answer, maintains that the present suit is barred by the judgment of the Cuyahoga common pleas entered in the suit commenced by plaintiff against the city, March 22, 1911. We may refer to the statement above for the facts and issues presented in that suit and the relief therein sought. The judgment recites that the cause was heard on the pleadings and evidence, finds "on the issues generally, in favor of defendant," denies the relief sought, and dismisses the petition. No report of an opinion of the common pleas is shown. The case was appealed to the circuit court, and the opinion of that court is reported in 17 Ohio Cir. Ct. (N. S.) 503. The specific relief asked in the petition was to enjoin the city from "proceeding with the application to assess compensation, and from interfering with plaintiff's peaceful possession" of the property. The circuit court held that the suit was one in ejectment and should have been brought up on proceedings in error and not on appeal; on its own motion the court dismissed the appeal for want of jurisdiction. It is not claimed that the action of the circuit court operates as a bar to the instant suit. What, then, is the true effect of the common pleas decree? It would seem that the

common pleas treated the case as an injunction suit; it dismissed the petition; and from the contentions made here it is to be inferred that counsel themselves regarded the suit as one of an equitable character. But, whether the suit be treated as one in injunction or in ejectment, it cannot on the present record be presumed that the common pleas disposed of the case on its merits. That court had prior to that time twice reversed the probate court upon its rulings in the appropriation proceeding; the first being the reversal of the judgment of the probate court upon the verdict assessing compensation for the property, when the cause was remanded for another trial, and the second when the common pleas in effect overruled the demurrer which the probate court had sustained to the city's application and remanded the case for further proceedings. While neither of these reversals amounted to a final judgment, as we have pointed out, the effect of each, at least in theory, was to leave the case pending in the probate court; and it may fairly be assumed that the common pleas court so regarded the appropriation proceeding when it rendered the decree of 1911 which is here pleaded in bar of the present suit. Upon this hypothesis it was not open to the common pleas to issue the injunction asked, for the reason that plaintiff had an adequate remedy at law in the probate court proceeding (Railroad v. Railroad, 72 Ohio St. 568, Syl. 1; C. T. & V. R. R. Co. v. City of Akron, 1 Ohio Cir. Ct. [N. S.] 174, 176; Union Ry. Co. v. Illinois Cent. Ry. Co., 207 Fed. 745, 749, 751, 125 C. C. A. 283 [C. C. A. 6]); and the same hypothesis would naturally have led the common pleas (without passing upon the constitutional validity of the statute of April 5, 1893, or the effect of its expiration according to its own terms) to deny relief which, if granted, would in practical result have allowed recovery of possession of the property. This feature of the case must therefore fall within the rule that a subsisting decree rendered in a suit between given parties will not operate to bar a second suit between them, unless the matter in controversy in the latter suit was determined on its merits in the first suit. Brown v. Fletcher, 182 Fed. 963, 966, 981, 105 C. C. A. 425, and citations (C. C. A. 6); Rempe & Son v. Ravens, 68 Ohio St. 113, 125, 67 N. E. 282; Swift v. McPherson, 232 U. S. 51, 55, 34 Sup. Ct. 239, 58 L. Ed. 499.

[7, 8] Another defense of the city is that plaintiff is estopped from asserting any claim to its "damage and detriment." The answer to this is twofold: (a) Defendant is in no position to claim the benefit of estoppel through action taken or expenditures made on the faith of any settled rule of decision as to municipal classification which was subsequently changed to its detriment. Shoemaker v. City of Cincinnati, 68 Ohio St. 603, 611, 613, 68 N. E. 1; Lewis, Auditor, v. Symmes, 61 Ohio St. 471, 487, 56 N. E. 194, 76 Am. St. Rep. 428. True, as we have seen, a change in the rule concerning such classification was made in 1902 (State ex rel. Knisely v. Jones ; State ex rel. Atty. Gen. v. Beacom), but the former rule, as we have also seen, condemned such limitations upon classification as were embodied in the act of April 5, 1893 (State ex rel. v. Cowles). And (b) the plaintiff and her predecessor in title actively contested the appropriation in one court or an-

other from the beginning of the proceedings in the probate court until the commencement of the instant case, except between 1896 and 1903, and for this intermission in active contest both the defendant and the property owner were apparently equally responsible; but the defendant pursued its course in spite of the continued pendency of the litigation, and so was legally chargeable with the peril of having its proceedings defeated because of the constitutional infirmity of the statute.

Thus, if we have rightly interpreted the complications disclosed by the record, we reach the simple question the statement of which furnishes its own answer: Can a municipal corporation, through any of its agencies and against persistent opposition of the owner, take and hold private property under an unconstitutional law? The title to the property remains in the owner though possession is in the city; the owner has received no compensation, and the only means offered in that behalf is through the old appropriation proceedings which are based solely on the unconstitutional law. Those proceedings are in effect but an effort to deprive a person of property without due process of law (Iron Mountain R. Co. v. City of Memphis, 96 Fed. 113, 121, 37 C. C. A. 410 [C. C. A. 6]); and it is needless to add that such proceedings are unavailing either to secure title to the property or enforce payment of compensation. It results, in view of the absence of facts amounting to estoppel, that plaintiff is entitled to recover possession of the property and judgment for reasonable rents, issues and profits.

[9] There is one qualifying consideration, however, which cannot be ignored. All municipal corporations are invested with "special power to appropriate, enter upon, and hold real estate within their corporate limits" "for parks, park entrances, boulevards" (2 Ann. Ohio Gen. Code, § 3677), and, since rendition of the judgments in the Jones and Beacom Cases, every "city" (according as municipalities have since been classified) has been empowered upon specified conditions to create a board of park commissioners (Id. §§ 4053, 4054), which in turn has likewise been invested with power to appropriate property for similar purposes (Id. § 4060); and although defendant has taken no step to reappropriate the property in question, the fact remains that if plaintiff were restored to possession of the property she might (and if its appropriation is still desired and necessary she would) have it taken away from her subsequently through valid appropriation proceedings. The litigation concerning the property has extended over so many years as to justify modification of the relief presently allowable in order to avoid the possibly vain result mentioned, as well as to terminate the litigation at the earliest time practicable.

In these circumstances we are disposed to direct the entry of a conditional judgment for recovery of possession of the property and of rents, issues, and profits; the condition being that unless defendant shall within a suitable time, to be fixed by the court below, adopt the necessary measures to authorize and in fact institute proper proceedings to appropriate the property, and also cause to be entered in the instant case a certificate of such action and of a declared purpose to prosecute the proceedings to judgment with all reasonable dispatch, the

judgment for possession and for rents, issues, and profits shall be carried into execution. And since municipalities are entitled to decline to take property after compensation has been assessed (O. G. C. § 3697, and see section 11091), provision will be made to retain jurisdiction of the present case for the purpose of carrying the judgment of the court below into execution in the event that such appropriation proceedings shall be had and no compensation paid.

An order will therefore be entered reversing the judgment below and remanding the cause, with direction to enter judgment in accordance with this opinion.

