## EMMKE et al. v. DE SILVA.

(Circuit Court of Appeals. Eighth Circuit. September 4, 1923.)

No. 6292.

1. **Courts ⚙➡347—Under Conformity Act, allegations of diverse citizenship properly challenged by general denial.**

Where a state statute permits allegations of jurisdiction to be challenged by a general denial, under Conformity Act June 1, 1872 (Comp. St. § 1537), allegations of diverse citizenship may be so challenged.

2. **Courts ⚙➡405(5)—Allegations as to diversity of citizenship raised for first time on appeal held too late.**

Where plaintiff was a resident of Illinois, and one of the defendants was a corporation engaged in operating a hotel in Missouri, a contention raised for the first time on appeal that diversity of citizenship was not shown *held* made too late.

3. **Courts ⚙➡323—No presumption that corporation and plaintiff were citizens of same state.**

Where plaintiff was a resident of Illinois, and one of the defendants was a corporation engaged in operating a hotel in Missouri, there is no presumption that it was an Illinois corporation.

4. **Courts ⚙➡351½—Case dismissed as against defendant shown not to be of diverse citizenship.**

Under Judicial Code, § 37 (Comp. St. § 1019), where it appears at the trial that there is no diverse citizenship between plaintiff and one defendant, it is the court's duty to dismiss the case as against that defendant.

5. **Innkeepers ⚙➡10—Evidence of misconduct toward guest held for jury.**

Evidence that an officer of a corporation operating a hotel came into plaintiff's room at 1 o'clock at night, while plaintiff and her husband were sleeping, and accused plaintiff of unchastity, and used vulgar language both to plaintiff and to her husband, *held* to authorize submission of the case to the jury on the theory that the intrusion was malicious, or in wanton disregard of plaintiff's rights, although no physical injury was inflicted.

6. **Innkeepers ⚙➡10—Duty to guest.**

An innkeeper, its officers and agents, must extend to a lady guest respectful and decent treatment, and refrain from willful conduct toward her that would interfere with her comfort, or humiliate and distress her.

7. **Damages ⚙➡54—Recovery may be had for mental distress, accompanied by malice and inhumanity.**

Recovery may be had for mental distress and anxiety of hotel guest, where the wrongs complained of were accompanied by insults, malice, and inhumanity.

8. **Innkeepers ⚙➡10—Hotel corporation liable for actual damages caused by agent insulting lady guest.**

A corporation engaged in operating a hotel is liable for actual damages caused by the acts of its agent in entering the room of a lady guest in the nighttime and accusing her of being a prostitute, etc., in the presence of her husband.

⚙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
293 F.—2

**9. Corporations ⬳498—Not liable in punitive damages for malicious, unauthorized, and unratified acts of agents and servants.**

A hotel corporation is not liable in punitive damages for the malicious or oppressive acts of its agent or servant towards a guest, which have not been authorized or participated in or ratified by it, though he owned a large part of the stock.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by Edna De Silva against John Emmke and another. Judgment for plaintiff, and defendants bring error. Reversed, unless plaintiff consents to a remittitur from the judgment of $1,500.

Martin J. O'Donnell, of Kansas City, Mo. (George H. Kelly, William Buchholz, and Isaac B. Kimbrell, all of Kansas City, Mo., on the brief), for plaintiffs in error.

Frank P. Sebree, of Kansas City, Mo. (Sam B. Sebree, of Kansas City, Mo., on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

LEWIS, Circuit Judge. The defendant in error recovered a judgment for $3,500 as damages, actual and exemplary, on account of maltreatment while she was a guest in a hotel at Excelsior Springs, Missouri, under the control and management of plaintiffs in error. The amounts recovered are separately stated in the verdict $2,000 for actual and $1,500 for exemplary damages. We are asked to reverse the judgment for two principal reasons, first, that the plaintiff did not prove the jurisdictional allegations, and, secondly, that the complaint did not state any ground for relief and the evidence does not support liability. They will be considered in the order named.

[1] It is alleged that the plaintiff was a citizen and resident of the State of Illinois and that defendants John Emmke and Elm Tree Inn Company, a corporation, were citizens and residents of the State of Missouri and that the Inn Company was incorporated under the laws of that State. The answer is a general denial. Prior to code procedure, the practice at common law was that jurisdiction should be challenged by special plea before the parties went to trial on the merits, and if not so challenged, diverse citizenship pleaded in the declaration was taken as conclusive. Railroad Co. v. Quigley, 21 How. 202, 214, 16 L. Ed. 73. After the passage of the Conformity Act of June 1, 1872, R. S. § 914 (U. S. Comp. Stat. § 1537), the rules of pleading in the several States directing how a jurisdictional allegation might be put in issue were recognized and given effect, and it was held in Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579, and other cases, that the challenge might be made in the answer by general denial if the State statute so provided. Missouri has such a statute. The proof adduced at the trial shows that plaintiff, Mrs. De Silva, was a married woman and that at the time she came to the hotel as a guest on April 1st and for several years theretofore she resided and had resided with her husband in Chicago and that that city was her home; that the defendant Inn Company was a corporation conducting the hotel and had been doing so

for several years theretofore; that defendant Emmke was the owner of most of the stock of the Inn Company ($45,000) and had devoted his time for about six years to assisting in the management and operation of the hotel; he was also president of the company; he and his wife resided in the hotel, and before he became interested in it he had been engaged in the hotel business at Kansas City for several years. We think this evidence, uncontradicted as it was, entirely sufficient to establish diverse citizenship between plaintiff and defendant Emmke. The objection need be considered only as to the Inn Company.

[2-4] Aside from the general denial of the answer and general requests by each defendant at the close of all the evidence for instructed verdicts, the point was not raised until the assignments of error were filed at the time the writ was sued out. The Inn Company made no claim below, nor does it make any here, that it is a citizen and resident of any State other than Missouri. The error assigned and argued is based on the fact that there is no evidence in the record tending to show that the Inn Company was a corporation of the State of Missouri and a citizen and resident of that state. It made no objection to the venue. In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 4 Ann. Cas. 1164; Camp v. Gress, 250 U. S. 308, 39 Sup. Ct. 478, 63 L. Ed. 997. It was shown to be a corporation and there is no presumption that it was an Illinois corporation. That was the only contingency that could have defeated the prima facie showing of diverse citizenship made by the complaint. Under such remote possibilities it does not seem to us that the ends of justice require us to entertain this belated objection of undisclosed and dubious merit. It did not appear at the trial that there was not diverse citizenship between the plaintiff and the Inn Company. If that had appeared it would have been the duty of the court to dismiss the case as against the Inn Company. Judicial Code, § 37 (U. S. Comp. Stat. § 1019). Of that duty the Supreme Court in Gilbert v. David, 235 U. S. 561, 567, 35 Sup. Ct. 164, 166 (59 L. Ed. 360), said:

"While this section gives the court the right to dismiss a suit when that situation appears, whether the parties raise the question or not, it is the duty of the defendant to bring the matter to the attention of the court, in some proper way, where the facts are known upon which a want of jurisdiction appears."

No one knew as well as the Inn Company the State to which it owed its corporate life. Not having raised the question in the court below, we think, under the circumstances, it is now too late to raise it for the first time here. Hill v. Walker, 167 Fed. 241, 92 C. C. A. 633; Pike County v. Spencer, 192 Fed. 11, 112 C. C. A. 433; Nichols v. City of Cleveland, 247 Fed. 731, 733, 159 C. C. A. 589; Oil Co. v. Cochran (C. C. A.) 276 Fed. 216; Chase v. Wetzlar, 225 U. S. 79, 85, 32 Sup. Ct. 659, 56 L. Ed. 990.

[5] On the merits, the complaint alleges that the Inn Company was in possession of and conducting the Elms Hotel, as a public hotel; that the defendant Emmke was one of its officers and its manager and agent, and that on April 16, 1920, the plaintiff and her husband were guests at the hotel for pay and as such in the possession and occupancy of a room in the hotel; that Emmke, while in the management of said

hotel as officer and agent, went into said room on the night of April 16, 1920, and there, maliciously and insultingly, accused plaintiff of unchastity and in her presence spoke of her husband in loathsome terms of vulgarity; whereby she suffered nervous strain and mental anguish and was greatly insulted and humiliated, to her damage. The objection to the sufficiency of the complaint and to the evidence offered in support of it is that neither shows personal violence or injury to the plaintiff. The objection to both is thus the same. We think neither is well taken. It is not controverted that the plaintiff wrote to the Inn Company from her home in Chicago asking for accommodations at the hotel and received a reply saying that the Inn Company had made reservations for her. She arrived there on April first, registered as a guest and was assigned to a room. She told the clerk or manager, Mr. Milburn, when she registered that her husband would arrive in a few days and be with her at the hotel from time to time, but that his business was such as to require him to go elsewhere on occasion and that he would not be with her constantly. He came to the hotel on April 11th and spent a night and day there with his wife, and returned to the hotel on the evening of April 16th and occupied the room with his wife that night. About one o'clock that night Emmke, who lived in the hotel with his wife, went to the room occupied by plaintiff and her husband. The room was dark. He entered. Plaintiff and her husband were asleep and on being awakened, Emmke, as testified by plaintiff, at once abused her and her husband in the insulting and malicious manner charged in the complaint. There is no dispute about these facts, except that Emmke and his wife, who was with him, deny that Emmke used the insulting and vulgar language as testified to by Mrs. De Silva. She said that Emmke called her a common prostitute and used the foulest language, which she repeated on the witness stand, concerning the immoral character and practices of her husband. There is not the slightest justification or excuse for the conduct attributed to Emmke. There is not a word in the record casting a suspicion or cloud on Mrs. De Silva's virtue, and she and her husband appear to be reputable people. She testified that Emmke appeared to be intoxicated and that Mrs. Emmke constantly implored him not to use such language, to not remain in the room, and assured him that nothing was wrong there. He testified that he went there in behalf of the Inn Company for the purpose of seeing that no improper conduct was being indulged in in that room, and that he made apologies the next day to Mr. De Silva for coming into the room.

[6, 7] The Inn Company was engaged in business of a public nature, it invited the public to accept its accommodations on payment of charges therefor, and while plaintiff was a guest in the hotel the law imposed on the Inn Company, its officers and agents, the duty of extending to her respectful and decent treatment and to refrain from willful conduct toward her that would interfere with her comfort and humiliate and distress her. Clancy v. Barker, 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653; De Wolf v. Ford, 193 N. Y. 397, 86 N. E. 527, 21 L. R. A. (N. S.) 860, 127 Am. St. Rep. 969; Dalzell v. Dean Hotel Co., 193 Mo. App. 379, 186 S. W. 41; Lehnen v. Hinds, 88 Kan. 58, 127 Pac. 612, 42 L. R. A. (N. S.) 830; Clancy v. Barker, 71 Neb. 83, 98 N. W.

440, 103 N. W. 446, 69 L. R. A. 642, 115 Am. St. Rep. 559, 8 Ann. Cas. 682, 14 R. C. L. 506. Notwithstanding no physical injury was inflicted, plaintiff was entitled to recover on account of the mental anguish and humiliation to which she was subjected, if Emmke's conduct was malicious or in wanton disregard of her rights. The court submitted the case to the jury on that ground and we think the evidence was amply sufficient for that purpose. De Wolf v. Ford, supra, is much like this case. There a servant of the innkeeper forced himself into the room of a lady guest in the night time, when she was clothed only in her nightgown, and addressed to her vile and insulting language, accusing her of immorality. There was no physical violence. It was held that she was entitled to recover. In Dalzell v. Dean Hotel Co., supra, the guest of the hotel company was maltreated but there was no violence to her person. It appeared, however, that serious physical ills resulted from the treatment which she received, but the court did not regard that as a necessary element of her cause of action and her right to recover. It was pointed out as the rule in Missouri, as well as elsewhere, that recovery could be had for mental distress and anxiety where the wrongs complained of were accompanied by circumstances of malice, insult and inhumanity. The rule is a just one and it would be a reproach to the law if it were otherwise. See also Hickey v. Welch, 91 Mo. App. 4; Lampert v. Drug Co., 238 Mo. 409, 141 S. W. 1095, 37 L. R. A. (N. S.) 533, Ann. Cas. 1913A, 351. We think the cause of action set up and sustained by the proof is trespass on the case. Stanley v. Bircher's Ex'r, 78 Mo. 245. There may be some difference in the authorities as to how it should be classified, whether in tort or for breach of contract, but taken either way there is a good cause of action. If a breach be accompanied with malicious acts there is liability on that account. In Chamberlain v. Chandler, 3 Mason, 242, Fed. Cas. No. 2575, the acts complained of by passengers on the ship consisted of insulting language and maltreatment by the master, though short of physical violence. Mr. Justice Story said:

"It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks on them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings, in the most tyrannical manner, and yet if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil jurisprudence. My opinion is that the law involves no such absurdity. It is rational and just. It gives compensation for mental sufferings occasioned by acts of wanton injustice, equally whether they operate by way of direct, or of consequential, injuries. In each case the contract of the passengers for the voyage is in substance violated; and the wrong is to be redressed as a cause of damage."

See also Austro-American S. S. Co. v. Thomas, 248 Fed. 231, 160 C. C. A. 309, L. R. A. 1918D, 873; Bleecker v. Railroad Co., 50 Colo. 140, 114 Pac. 481, 33 L. R. A. (N. S.) 386; Hall v. Jackson, 24 Colo. App. 225, 134 Pac. 151.

[8, 9] Whatever conflict there may have been, it may be safely said that now there is but little or none on the question of liability of a corporation or individual for torts committed by their agents while

they are engaged in the service of their employment, and the liability extends to the character of cases which we have here. But there is serious conflict as to the measure of liability to be applied to the principal. As to actual damages, principal and agent are alike liable. The inquiry is whether they are both liable for punitive damages, and, if so, under what conditions. Damages of the latter class are allowed as punishment, sometimes called smart money, because of the wrongful or malicious purpose and intent in their infliction. The principal may have no knowledge or information of his agent's intended wanton and malicious conduct against the rights of others. The question is whether his wrongful intent shall be imputed to his principal and the principal held equally with him beyond compensatory damages. Mr. Thompson, in his Commentaries on the Law of Corporations, section 6377 et seq., criticizes the authorities that hold that a corporation is not liable in exemplary damages unless it has authorized the conduct of its officer or agent or afterward ratifies it, but he recognizes the difference and conflict in the cases. There can be, we think, no doubt about the rule which we must apply. Woldson v. Larson, 164 Fed. 548, 90 C. C. A. 422; Clark v. Belt, 223 Fed. 573, 138 C. C. A. 1. It is clearly stated in Railroad Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. Mr. Justice Gray, who delivered the opinion of the court, referred to the wide divergence in the decisions of the State courts upon this question. But it was held, without dissent, that the corporation was not to be charged with punitive damages for the malicious or oppressive acts of its agents and servants which had not been authorized or participated in or ratified by it. In Railway Co. v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146, the railway company was held in punitive damages, but it appeared that its vice president and assistant general manager employed an armed force of several hundred men and took forcible possession of the railroad of another company, during which lawless acts Harris was shot, and that upon its seizure the defendant company entered into possession of the railroad so seized and commenced and for a time continued to use and operate the same as its own. This was ratification. Emmke was president of the Inn Company and he gave his time to assisting in the management of the hotel. He owned a large part of the stock of the Inn Company but that did not make him the company. It does not appear from the evidence that the company, or any other officer of it, knew what Emmke was about to do or of his intentions, nor that the company authorized him to do what he did or to do any other act of like character, or that it ever ratified his conduct. We cannot but conclude that the Inn Company was not and Emmke was liable in punitive damages. The verdict found that amount separately from actual damages, but it assessed $1,500 as punitive damages against both the Inn Company and Emmke. It cannot be known or ascertained how much of that was against the Inn Company. See Washington Gas Light Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543.

The judgment will be affirmed on condition that the plaintiff file in this court within sixty days after the opinion goes down a remittitur from the judgment of $1,500 assessed as punitive damages, failing in which there must be a reversal as to both defendants.