## Anna Cox, Defendant in Error, v. Rhodes Avenue Hospital, Plaintiff in Error.

### Gen. No. 20,708.   (Not to be reported in full.)

Error to the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1914.   Affirmed.   Opinion filed February 16, 1916.

### Statement of the Case.

Action of trespass on the case by Anna Cox, plaintiff, against Rhodes Avenue Hospital and Dr. Frank Deacon, defendants, for the recovery of damages for the alleged wrongful detention amounting to false imprisonment in the hospital conducted by defendant company.   During the trial Dr. Deacon was dismissed from the case and the trial proceeded against the hospital company alone.

In the amended declaration it was alleged that defendants were operating the Rhodes Avenue Hospital for profit; that plaintiff was a patient therein for reward; that she was recovering from the effects of a serious major operation which had been performed at the hospital; that on April 9, 1912, she was discharged from further hospital treatment by her surgeon, with permission to leave the hospital and return home; that she was in a weak and highly nervous condition, due to said operation, but that she was physically able to leave said hospital, and attempted to do so; that defendants, disregarding their duty on said date, demanded that before plaintiff be permitted to leave the hospital she sign a promissory note for the sum claimed due defendants from plaintiff, for accommodation as a patient in said hospital; that said note contained a warrant of attorney authorizing confession of judgment; that defendants informed plaintiff that

unless said judgment note were signed she could not leave the hospital; that thereupon defendants wrongfully and oppressively detained her in said hospital, without probable or reasonable cause, for the space of three hours, contrary to the laws of the State and against the will of the plaintiff; that during said unlawful restraint, defendants applied threats and vile epithets to the plaintiff, by reason of which premises plaintiff was frightened and rendered hysterical and her weak condition aggravated, and her recovery from the effects of said operation greatly retarded; furthermore, that plaintiff was exposed to disgrace and injured in credit and circumstances, whereby she suffered damages to the extent of $5,000. There was a second count in the amended declaration, which the court instructed the jury to disregard. To this declaration a plea of general issue was filed.

On the trial of the case before the court and jury, a verdict for $775 was returned, upon which judgment was rendered, to reverse which defendant has prosecuted this writ of error.

Plaintiff testified that she entered defendant's hospital on March 22, 1912, to submit to a comparatively minor operation; that at that time she gave to Dr. Hertel, her surgeon, $30, for which she was given a receipt by defendant; this $30 was to pay for one week's accommodation at the hospital; that she was taken to the operating room on the 23rd, but was not then operated on because it was discovered she had other ailments; that on the 25th she was informed that she was suffering with a tumor; that on the 27th she was operated on for fibroid tumor, appendicitis, hemorrhoids, and cyst of the ovary; that because of these operations she was compelled to stay at the hospital longer than the time she had paid for; that on April 9th she was informed by Dr. Hertel that she was physically fit to leave the hospital; that about five o'clock p. m. on the same day she was presented, by one of the

nurses, with a bill for $82, hospital charges; that her physician also told her that if the bill was not paid she would have trouble with the hospital; that he then handed her a judgment note for $82 which he requested her to sign and which she refused to execute; that at the time the bill was presented, she had but two or three dollars in her possession and that she informed the nurse that she could not pay her bill then because she was unable to get any money until she could go to the bank; that she had arranged for a taxicab to call for her that evening at six o'clock; that she was later informed that the taxicab was there for her and she was asked whether she had signed the note and was told that unless it was signed she would not be permitted to leave the hospital; that she requested that the chauffeur be sent to her room, but was informed that he would not be allowed to come into the building; that she then went to the window of the building and threw a dime to the chauffeur who was standing outside, to telephone her sister that she was being detained and could not come home; that at eight o'clock that same evening a lawyer by the name of Terwilliger, at the request of plaintiff's sister, came to the hospital; that when he came, he picked up her suitcase and walked out of the room towards the stairs; that they were met there by the night nurse, and were told that she had orders from the office not to let her go; that she was, however, permitted to go downstairs so the matter might be discussed at the office; that there again a talk was had with the cashier who demanded that plaintiff either pay the bill or sign a note for the amount; that finally Mr. Terwilliger stated that she could not be held at the hospital for the payment of that debt, and that she would pay same as soon as she was able to do so; that while such conversation took place, someone, whom she believed to be Dr. Deacon, remarked that plaintiff did not want to pay her bill because she was a crook; that after a little more col-

Cox v. Rhodes Avenue Hospital, 198 Ill. App. 82.

loquy the door was unlocked and plaintiff and Mr. Terwilliger went home. Plaintiff further testified that she was in a weak, hysterical condition thereafter; that she required assistance down the stairs and to her taxicab; that thereafter she continued to be in a weak and hysterical condition as a result of the acts of the defendant and that she was not able to do any work for six months after she returned home from the hospital.

Mr. Terwilliger was also called as a witness, and corroborated the statements of the plaintiff as to what occurred while present, and what he did. Also, that when he came to plaintiff's room in the hospital he found plaintiff in a hysterical condition and that he had to assist her out of the hospital to the taxicab.

The chauffeur corroborated the testimony of the plaintiff as to notifying her sister that she was being held at the hospital, and that he was not permitted access to the plaintiff and that he was ordered to take his machine from in front of the hospital; that at the time plaintiff entered his car she appeared to be in a weak condition and looked as though she had been crying.

Another witness, Dr. Harpole, stated that he saw plaintiff on the day after she returned home; that he found her in a weak and highly nervous condition; that the occurrence at the hospital as related by the plaintiff would have a tendency to retard her recovery from the effects of the operation which had been performed on her.

On behalf of the defendant, Dr. Deacon testified that he knew nothing about the occurrence aforementioned, because he was not present. Dr. Hertel, testifying on behalf of the defendant, also stated that he knew nothing of the alleged altercation relative to the promissory note, and that there were no threats made against plaintiff in his presence. He did state, however, that he told plaintiff that she would better settle the bill

and save trouble.  He also testified that plaintiff was in a highly nervous condition before entering the hospital, and that upon leaving it she was in better condition than at the time she entered it, and that at the time of the trial she looked better and weighed more than at the time prior to the operation.

Another witness for the defendant, the supervising nurse at the hospital, testified that plaintiff was not detained against her will; that there were no locks on the doors of the patients' rooms; that Dr. Deacon was not there at the time in question; that no one called plaintiff names; that when plaintiff was asked to pay her bill she became hysterical; that plaintiff said she would not pay it; that she also complained about Dr. Hertel and threatened to sue him; that plaintiff used the telephone that evening at 6:30; that she had never heard of plaintiff's alleged detention or the altercation relative to the judgment note before the suit was started.

Another witness for the defendant, one of the nurses at the hospital, testified that she never made any threats concerning plaintiff; that nobody present made any threats; that plaintiff was not asked to pay her bill or sign a note; that she saw plaintiff walking about the building along the corridors, between 5:30 and 7 o'clock in the evening; that the doors were never locked, and that plaintiff was not detained.

EUGENE STEWART, for plaintiff in error.

W. TUDOR AP MADOC, for defendant in error.

MR. PRESIDING JUSTICE PAM delivered the opinion of the court.

### Abstract of the Decision.

1.  FALSE IMPRISONMENT, § 2*—*when physical and forcible detention not essential.*  In an action of trespass on the case to recover damages for the alleged wrongful detention of plaintiff,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Cox v. Rhodes Avenue Hospital, 198 Ill. App. 82.

amounting to false imprisonment, in a hospital conducted by defendant company, it is not essential to a recovery that plaintiff should have been physically and forcibly detained by defendant, but conduct of defendant of such character as to make plaintiff, in her then condition, believe that if she attempted to leave the hospital she would be forcibly detained, constituted a wrongful detention against her will.

2. FALSE IMPRISONMENT, § 29*—*when question of wrongful detention one of fact.* In an action of trespass on the case to recover damages for the alleged wrongful detention of plaintiff, amounting to false imprisonment, in a hospital conducted by defendant, evidence examined and *held* to present a question of fact for the jury as to whether plaintiff had been wrongfully detained against her will.

3. FALSE IMPRISONMENT, § 28*—*when evidence sufficient to support verdict.* In an action of trespass on the case to recover damages for the alleged wrongful detention of plaintiff, amounting to false imprisonment, in a hospital conducted by defendant company, evidence examined and *held* sufficient to support a verdict for plaintiff.

4. FALSE IMPRISONMENT, § 30*—*when instructions properly given.* In an action of trespass on the case to recover damages for wrongful detention, amounting to false imprisonment, instructions examined and *held* properly given.

5. APPEAL AND ERROR, § 1561*—*when refusal to give instruction harmless.* Refusal to give an instruction requested by defendant is harmless error where as much of the instruction as was applicable to the facts had been covered by other instructions given at defendant's request.

6. EVIDENCE, § 74*—*when conversations with third persons admissible.* Evidence of conversations of plaintiff with others held outside of the presence of representatives of the corporation defendant are admissible when part of the *res gestæ.*

7. APPEAL AND ERROR, § 1691*—*when error in examining witness waived.* In an action against a corporation defendant, any error of counsel for plaintiff in asking a question of a witness, who was the superintendent of defendant and in actual control of its affairs, is waived where the witness insisted upon answering after objection thereto was sustained and such action of the witness was concurred in by counsel for defendant.

8. FALSE IMPRISONMENT, § 34*—*what damages recoverable.* In an action of trespass on the case to recover damages for wrongful detention, amounting to false imprisonment, punitive as well as actual damages are recoverable.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

9. FALSE IMPRISONMENT, § 29*—*when amount of recovery a question for jury.* In an action of trespass on the case to recover for wrongful detention, amounting to false imprisonment, the question of damages is for the jury.

10. FALSE IMPRISONMENT, § 37*—*when damages not excessive.* In an action of trespass on the case to recover for wrongful detention, amounting to false imprisonment, verdict for $775 *held* not excessive.