### SMITH v. SURATT et al.

Fourth Division. Fairbanks. February 17, 1926.

No. 2848.

**1. Injunction ⊚⇒94—Equipment and Movements of North Pole Explorers Not Entitled to Privacy, When Open to Public Sight.**

Plaintiff alleges in his complaint that he is in charge of and director of the Detroit Arctic Expedition, organizing at Fairbanks to go to Point Barrow, and thence to attempt a flight by airplane over the North Pole; that the Pathé News Service is assisting in paying the expenses of the project, and that its expenses are to be paid in part by moving pictures taken of its movements by the Pathé Service; that the defendants, against the wishes and over the protests of the plaintiff, have been taking and are threatening to take moving pictures of the movements of the plaintiff's airplanes and outfit, to dispose of by sale to others in competition with the Pathé Service, and that, if the defendants are permitted to take such pictures of plaintiff's properties and movements, the plaintiff and his associates will suffer great and irreparable damage; that the defendants are insolvent and not able to respond in damages; and plaintiff prays for an injunction to restrain the defendants from doing the acts alleged. *Held*, in this particular case, there is no item of news that has been created by the plaintiff, to which he has a right as against the defendant Suratt. The enterprise itself is of public interest. It is not a matter of business, in which its rights might be interfered with by the defendant, or anybody else, who desires to take moving pictures of its equipment or machines. It cannot claim any right of privacy. Injunction denied.

**2. Torts ⊚⇒8—Unfair Competition—Pirating Pictures of North Pole Expedition.**

A North Pole expedition and its equipment, and movements of its machinery and airplanes, is of a public nature, the members of the expedition are public characters, and the enterprise and expedition is a matter of great public interest.) A photographer, not attached to the expedition, has a right to photograph anything connected with the enterprise, provided he can do so lawfully, and violates no confidence of the expedition or its members, and does not interfere with the expedition or its members in taking and publishing pictures.

The complaint in this case states as follows:

"(1) That plaintiff herein is in charge of, and the sole director of, the Detroit Arctic Expedition, which said expedition expects to start from Nenana and Fairbanks, Alaska, within a short time, for Point

Barrow, Alaska, and thence to attempt to make a flight by airplane over the North Pole.

"(2) That said expedition is a privately financed expedition, financed by capitalists in Detroit and elsewhere in the East, and by the Pathé News Service.

"(3) That no aid is being received from any government agency, or from any government, state, territorial, or municipal funds, and all expenses are being borne by the backers of said expedition, who are private individuals and corporations.

"(4) That a part of the expense of said expedition is expected to be recovered from the release and sale of moving pictures of said expedition, to be taken by the duly authorized representatives of said expedition, now at Nenana, Alaska, and no other person, corporation, or organization has any right or authority to take any picture of said expedition at any stage thereof, for exhibition or sale, or otherwise.

"(5) That the defendants Merl La Voy and Richard Suratt, against the wishes and over the protests of plaintiff, at the town of Nenana, Alaska, where a part of the equipment of the said expedition is being assembled, have been taking and attempting to take moving pictures of various parts of said expedition and of the members thereof, who are preparing the tractors and other equipment for said trip, and have heretofore entered on property in the possession of plaintiff herein to take pictures of said equipment and of the men engaged in preparing it for use on said trip.

"(6) That said defendants have announced that they intend to take pictures of the start of said expedition, and to follow along the trail to be made by the expedition under the charge of plaintiff herein, and to take moving pictures at various places, with the idea of developing and selling them before the Pathé News Service could develop and place their said pictures on the market.

"(7) That, if said defendants are permitted to make and market such pictures, any pictures taken by the Pathé News Service, which service is assisting in the financing of said expedition, will be of no value, and plaintiff herein and his associates will suffer great a_d irreparable damage and loss.

"(8) That plaintiff is informed and believes, and therefore so alleges, that defendants are insolvent, and not able to respond in damages for any loss or damage suffered by plaintiff and his associates.

"(9) That plaintiff has no plain, speedy, and adequate remedy at law, and unless defendants, and each of them, their agents, servants, and employees, are enjoined from taking moving pictures of and photographing said expedition, at its start and at the various places along the trail between Nenana and Point Barrow, Alaska, and of the start of the planes at Fairbanks, Alaska, plaintiff herein and his associates will suffer great and irreparable damage and loss, the amount of which cannot be properly estimated.

"(10) That a part of said expedition will start from Fairbanks, Alaska, from which place the planes for flying over the North Pole will make their start, and plaintiff is informed and believes, and therefore so alleges, that defendants, their servants, agents, or represent-

atives, purpose to take moving pictures of the start of said planes from Fairbanks, Alaska.

"(11) That the start of said planes, and the start of the tractors bearing the equipment for Point Barrow from Nenana, Alaska, are all a part of the said Detroit Arctic Expedition, and are financed by the same people.

"(12) That the contributors to the Detroit Arctic Expedition are several in number, and plaintiff herein institutes this action on behalf of all, to avoid having a multiplicity of plaintiffs.

"(13) That plaintiff, in order to protect his rights, has been compelled to institute and prosecute this action, and has suffered damage by annoyance and delay caused by defendants, and has been damaged to the extent of one thousand dollars."

Upon this complaint a temporary restraining order was issued ex parte by the court a few days ago, and immediately the defendant Richard Suratt appeared by counsel and interposed a demurrer to the complaint. The demurrer states two grounds:

"(1) That there is a defect of parties plaintiff herein, in that the plaintiff is not the real party in interest, and that it does not appear upon the face of said complaint that the plaintiff herein has any interest in the subject-matter of this action or in the relief sought herein; but, on the contrary, it appears upon the face of the complaint that the 'Pathé News Service,' so called, is the only person or persons, firm, corporation, or association, whatever its status may be, named in said complaint, that appears therefrom to have any interest, or pretended interest, in the subject-matter thereof or in the relief sought therein.

"(2) That said complaint does not state facts sufficient to constitute a cause of action against the defendant, or to entitle the plaintiff to the relief sought in said complaint."

John A. Clark, of Fairbanks, for plaintiff.

T. A. Marquam and Louis K. Pratt, both of Fairbanks, for defendant Suratt.

CLEGG, District Judge. Counsel for the defendant insist upon both grounds of the demurrer, but it is stated in argument that the second ground is the one upon which they rely, as a decision upon the first ground would merely delay the conclusion on the merits of the suit, and place the plaintiff in the position of merely commencing another suit. For that reason the court may overlook the contention of the defendant that there is a defect of parties plaintiff herein, but it appears that the argument made by counsel for defendant is not wholly without merit.

It appears that the action was commenced by the plaintiff, who claims to be a director of the Detroit Arctic Expedition. The complaint states that this expedition is financed by private capitalists in Detroit and elsewhere in the East; that is, in the Eastern States. It states further that Smith is the sole director of this enterprise, and the only natural and legal inference that can be drawn from the allegations of the complaint are that Smith was employed as the director of this organization, and, as such, of course, he would have no legal capacity to sue in the present action, although, as a matter of fact, it has not been contended that he has no legal capacity to sue; but it would appear, further, from the allegations of the complaint, that suit is brought in the interest of the expedition, as well as in the interest of the Pathé News Service. Just how the plaintiff, Smith, could maintain an action under these circumstances it is impossible for the court to say.

Passing from this question, however, to the question that the complaint does not state sufficient facts to constitute a cause of action against the defendants, or against the defendant Suratt: The argument was made by the plaintiff, and it is the contention of the plaintiff, that because of the fact that the Detroit Arctic Expedition, of which the plaintiff, Smith, is the agent and employee, is a privately financed enterprise for the purpose of flying over the North Pole from Point Barrow in the territory of Alaska, it has the status of a business organization, so far, at least, as it is entitled to reap the benefit of any pictures which may be taken of the expedition from the time it starts until it accomplishes its object or until it returns from doing so; that, the enterprise being privately financed, its creation is due to these people who put up the money, and, if anybody is to be benefited in a commercial way from the transaction, the Pathé News Service and the plaintiff are the principal parties who should be benefited thereby.

It may be stated here that the complaint in no place states anything at all with reference to the defendant Suratt. Who he is, is a matter of conjecture, except that it has been stated in argument by counsel for the defendant, and assented to by the plaintiff, that he is the agent or representative of the International News Service, which is a competing firm with the Pathé News Service. Of course, legally, the court can take no notice of this agreement on the part of counsel. The com-

plaint must be viewed entirely by the allegations which it contains. For the purposes of this demurrer, therefore, so far as the complaint shows, it contains nothing which would negative the idea that the defendant Suratt is one of the representatives which the complaint states the expedition has appointed to take pictures.

I call the attention of counsel to paragraph 4 of the complaint which says:

"That a part of the expense of said expedition is expected to be recovered from the release and sale of moving pictures of said expedition, to be taken by the duly authorized representatives of said expedition, now at Nenana, Alaska, and no other person, corporation, or organization has any right or authority to take any picture of said expedition at any stage thereof, for exhibition or sale, or otherwise."

Paragraph 5 of the complaint says:

"That the defendants Merl La Voy and Richard Suratt, against the wishes and over the protests of plaintiff, at the town of Nenana, Alaska, where a part of the equipment of the said expedition is being assembled, have been taking and attempting to take moving pictures of various parts of said expedition and of the members thereof, who are preparing the tractors and other equipment for said trip, and have heretofore entered on property in the possession of plaintiff herein to take pictures of said equipment and of the men engaged in preparing it for use on said trip."

You will see that the only description of the "duly authorized representatives," as claimed in paragraph 4 of the complaint is that they are now at Nenana, Alaska, and paragraph 5 says that Merl La Voy and Richard Suratt, at Nenana, "have been taking and attempting to take moving pictures of various parts of said expedition," etc.

The court is not bound to conclude that Suratt is not one of the "duly authorized representatives," as claimed in paragraph 4. Every intendment, the law of pleadings says, should be taken against the pleader. There are other inartificialities in the pleadings, in the complaint, which have been referred to by counsel for the defendant who last argued the case. Probably these are due to haste in the preparation of the document and in the preparation of the pleadings. For instance, it is stated in the same paragraph 5 that these defendants "have heretofore entered on property in the possession of plaintiff herein to take pictures of said equipment and of the men engaged in preparing it for use on said trip." The court may very well ig-

nore this allegation in the complaint, for the reason that it does not specify what particular property they have entered into possession of. It does not say whether it is real property, or personal property—whether it was tractors they have entered into possession of, the trailers, or other equipment.

Futhermore, while I am on this subject, I might point out the insufficiency of the allegations in paragraphs 6 and 7. Paragraph 6 says:

"That said defendants have announced that they intend to take pictures of the start of said expedition, and to follow along the trail to be made by the expedition under the charge of plaintiff herein, and to take moving pictures at various places, with the idea of developing and selling them before the Pathé News Service could develop and place their said pictures on the market."

And paragraph 7 says:

"That, if said defendants are permitted to make and market such pictures, any pictures taken by the Pathé News Service, which service is assisting in the financing of said expedition, will be of no value, and plaintiff herein and his associates will suffer great and irreparable damage and loss."

You will observe that the allegation is that the defendants have merely announced that they intend to take pictures, and follow along the trail, and take moving pictures at various places, with the idea of developing and selling them before the Pathé News Service could develop and place their pictures on the market. They may have ample time to change their idea before these pictures are ultimately taken, and, "if said defendants are permitted to make and market such pictures, any pictures taken by the Pathé News Service," etc., "will be of no value." No fact is stated to indicate how the Pathé News Service pictures are to be rendered of no value, or how they can develop and sell the pictures before the Pathé News Service. The means of transportation are equal as between the two companies, or as between the Pathé News Service and the defendant Suratt, and no statement is made at all to inform the court as to how the defendant is to overreach the Pathé News Service in making, developing, and marketing the pictures.

It is elementary that an injunction cannot be granted, where the injury complained of either is not substantial, or is merely anticipated or doubtful.

In Ruling Case Law, section 57, volume 14, there is this statement:

"A mere apprehension of future injury is not enough to warrant the issuance of a permanent injunction."

This complaint, of course, is a request for a permanent injunction, and it must be tested by this rule. The statement says further:

"It must appear, to the satisfaction of the court, that such apprehension is well grounded; that is, a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction be not granted."

For this reason the complaint is insufficient, in that it merely states an apprehension of injury, without informing the court as to how it could be brought about. It is problematical from the entire complaint, after a careful reading and careful study, as to whether the relief sought here is in favor of the plaintiff, or is in favor of the Detroit Arctic Expedition, or is in favor of the Pathé News Service.

The plaintiff contends, as I have stated before, that they have created this expedition and assembled all the tractors, equipment, and supplies, and planes, and have brought them to Alaska, and that they are intending to profit from any commercial advantage that can be gained by the making, developing, and sale of pictures to be shown before the public.

I think the argument of Judge Pratt is clear and convincing to the effect that there is no similarity between the facts in this particular case and the case upon which plaintiff relies, namely, International News Service v. Associated Press, reported in 248 U. S. page 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293. There it was the contention of the plaintiff that they had gathered all the items of news, which were pirated after it had been assembled and first published by the defendant, International News Service. It was claimed by the International News Service in that case that, by the fact of publishing it, it was a publication to the world of which they and their people might make use, and that the right of the Associated Press in the news was thereby abandoned to the public.

Here in this particular case there is no item of news that has been created by the plaintiff to which he has a right as against the defendant, Suratt. In the first place the business of the

Detroit Arctic Expedition, or the reason for its existence, I should say, is not a business reason. They are not engaged in business. It is a heroic adventure, conceived by some of the members of the expedition, perhaps, for the purpose of making the first flight over the North Pole from United States territory into the North Polar seas. Primarily it is for the purpose of "prospecting," as an Alaskan would say, or exploring, and for adding to the geographical, astronomical, and other scientific developments of the century. Ever since the ill-fated expedition of Sir John Franklin to discover a Northwest Passage on this continent, such attempts have been surrounded and clothed with a remarkable public interest. The enterprise itself is of public interest. It can in no way be conceived to be a matter of business, in which its rights might be interfered with by the defendant or anybody else who desires to take moving pictures of its equipment or machines. As such, as a public enterprise in which everybody is interested, and in which the public at large is interested, it cannot claim any rights of privacy.

While there is an irreconcilable conflict of judicial authority on the proposition of the right of privacy, and while it is not necessary for this court to decide whether such a right in fact exists or not, an enterprise of this public character, financed as it may be by private individuals, who are necessarily units of the public, there can be no right of privacy adhering to it.

On account of the scarcity or the lack of a complete law library, it is impossible for the court to follow this subject to any great detail. In Bouv. Law Dict. p. 750, it is stated as follows:

"In an article in 4 Harvard Law Review, p. 193, by Samuel D. Warren and Louis Brandeis, the following are suggested as the limitations to the right of privacy."

There are several of them. The first is as follows:

"The right to privacy does not prohibit any publication of matter which is of public or general interest."

If it does not prohibit the publication of matter of public or general interest, the right to privacy naturally could not prohibit the making or developing of pictures of this public enterprise.

There are, I find from examination, numerous holdings to the effect that a public man cannot claim the right of privacy. One who is a candidate for public office, or who holds public office, or who is a statesman, artist, or author, is a public man, and cannot claim the right of privacy. On the same basis an explorer would be a public character. His associates would also be public characters. His equipment would also assume the same character. It would be open to the public.

I refer counsel to the case of Corliss v. E. W. Walker Co., which is reported in 64 F. 281, 31 L. R. A. 283. I will read what appears on page 282. Corliss was an inventor, and his relatives sued to enjoin the Walker Company from publishing a photograph of Corliss. In deciding the case Justice Colt says:

"When a person engages a photographer to take his picture, agreeing to pay so much for the copies which he desires, the transaction assumes the form of a contract; and it is a breach of contract, as well as a violation of confidence, for the photographer to make additional copies from the negative. The negative may belong to the photographer, but the right to print additional copies is the right of the customer."

Then he cites several cases.

"Independently of the question of contract, I believe the law to be that a private individual has a right to be protected in the representation of his portrait in any form; that this is a property, as well as a personal, right; and that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk,"—citing several cases.

"But, while the right of a private individual to prohibit the reproduction of his picture or photograph should be recognized and enforced, this right may be surrendered or dedicated to the public by the act of the individual, just the same as a private manuscript, book, or painting becomes (when not protected by copyright) public property by the act of publication. The distinction in the case of a picture or photograph lies, it seems to me, between public and private characters. A private individual should be protected against the publication of any portraiture of himself, but where an individual becomes a public character the case is different. A statesman, author, artist, or inventor, who asks for and desires public recognition, may be said to have surrendered this right to the public. When any one obtains a picture or photograph of such a person, and there is no breach of contract or violation of confidence in the method by which it was obtained, he has the right to reproduce it, whether in a newspaper, maga-

zine, or book.  It would be extending this right of protection too far to say that the general public can be prohibited from knowing the personal appearance of great public characters.  Such characters may be said, of their own volition, to have dedicated to the public the right of any fair portraiture of themselves.  In this sense, I cannot but regard Mr. Corliss as a public man.  He was among the first of American inventors, and he sought public recognition as such."

This case is quoted with approval in the case of Vassar v. Loose-Wiles Biscuit Co. (D. C.) 197 F. 982, where Judge Van Valkenburgh says:

"Where a person is a public character, the right of privacy disappears."

Now I refer to the case of Pavesich v. New England Mutual Life Insurance Co., which has been cited here in the argument, which is reported in 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101, 106 Am. St. Rep. 104, 2 Ann. Cas. 561, where the same doctrine is laid down by the Supreme Court of Georgia.  The court says:

"The right of privacy, however, like every other right that rests in the individual, may be waived by him, or by any one authorized by him, or by any one whom the law empowers to act in his behalf, provided the effect of his waiver will not be such as to bring before the public those matters of a purely private nature which express law or public policy demands shall be kept private."

And, omitting a few paragraphs, the court said further:

"So it is in reference to those belonging to the learned professions, who by their calling place themselves before the public, and thereby consent that their private lives may be scrutinized, for the purpose of determining whether it is to the interest of those whose patronage they seek to place their interests in their hands.  In short, any person who engages in any pursuit or occupation or calling which calls for the approval or patronage of the public submits his private life to examination by those to whom he addresses his call, to any extent that may be necessary to determine whether it is wise and proper and expedient to accord to him the approval or patronage which he seeks."

These are the only cases I can find which seem to be an aid to the court in determining the questions of law now raised by the demurrer.  I am bound to adhere to the excerpt that I have quoted from 4 Harvard Law Review, and from these decisions that this enterprise now before the court, known as the Detroit Arctic Expedition, and its members and equipment, is of a public nature, that the members are public characters, and that

the enterprise and expedition undertaken is a matter of great public interest.

It has been argued before the court here that it is a matter of great public interest, and, as such, not only the publication of any photographs, but the right to possession of any news concerning it or its progress, is a matter to which the public is entitled, and in this particular case no rights cognizable in equity appear from the statements of the complaint, which a court of equity could enforce as against the defendant by virtue of the acts charged against him. He has a right to photograph anything connected with the enterprise, provided he can do so lawfully, and provided he violates no confidence of the expedition or its members, and provided he does not interfere with the expedition or its members in taking pictures and publishing them. For these reasons, the court will sustain the demurrer.