Virginia Eick, Appellant, v. Perk Dog Food Company, and Harry O'Neil, Edward H. Larson and Nelson J. McMahon, Individually and Trading as O'Neil, Larson and McMahon, Appellees.

Gen. No. 45,461.

Opinion filed June 10, 1952.

Released for publication June 30, 1952.

MITCHEL E. FERMAN, and EDWIN CRAMER, both of Chicago, for appellant.

GOLDBERG & WEIGLE, of Chicago, for certain appellee; JOHNSON, CASS & BATEMAN, of Chicago, for certain other appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order sustaining a motion to strike plaintiff's amended complaint and dismissing the suit for failure to state a cause of action. The complaint charges that defendants, without the consent of plaintiff, used her photograph in an advertisement promoting the sale of dog food. The advertisement, it is charged, depicted plaintiff, a blind girl, as the prospective donee of a "Master Eye Dog," although plaintiff was already the owner of such a dog and had no need for another. This, plaintiff charges, caused her to lose the respect and admiration of those who knew her and to suffer humiliation and mental anguish. No special damages are alleged. These

allegations state a cause of action for violation of an interest which has become known as the right of privacy. The question of whether or not such a right exists in Illinois has never been passed upon by any court of review in this State.

The right is now recognized by the great preponderance of authority throughout the country. Courts of at least twenty American jurisdictions have explicitly recognized the right either in direct holdings or well considered *dicta. Smith v. Doss,* 251 Ala. 250 (1948); *Smith v. Suratt,* 7 Alaska 416 (1926); *Reed v. Real Detective Pub. Co.,* 63 Ariz. 294 (1945); *Kerby v. Hal Roach Studios,* 53 Cal. App. (2d) 207 (1942); *Peay v. Curtis Publishing Co.,* 78 Fed. Supp. 305 (Dist. Ct., D. C., 1948); *Cason v. Baskin,* 159 Fla. 31 (1947); *Pavesich v. New England Life Insurance Co.,* 122 Ga. 190 (1905); *Pritchett v. Knox Board of Commissioners,* 42 Ind. App. 3 (1908); *Kunz v. Allen,* 102 Kan. 883 (1918); *Foster Milburn Co. v. Chinn,* 134 Ky. 424 (1909); *Graham v. Baltimore Post Co.,* Sup. Ct., Baltimore, Md. (1932), reported in 22 Ky. L. J. 108; *Pallas v. Crowley, Milner & Co.,* 322 Mich. 411 (1948); *Munden v. Harris,* 153 Mo. App. 652 (1911); *Norman v. City of Las Vegas,* 64 Nev. 38 (1947); *Vanderbilt v. Mitchell,* 72 N. J. Eq. 910 (1907); *Flake v. Greensboro News Co.,* 212 N. C. 780 (1938); *Friedman v. Cincinnati Local Joint & Executive Board,* 20 Ohio Ops. 473 (1941); *Hinish v. Meier & Frank Co.,* 166 Ore. 482 (1941); *Harlow v. Buno Co.,* 36 Pa. D. & C. 101 (1939); *Holloman v. Life Insurance Co. of Va.,* 192 S. C. 454 (1940). Three other states have statutes recognizing the right,—New York Civil Rights Law, secs. 50, 51 (McKinney, 1948); Utah Rev. Stat., secs. 103–4–7, 103–4–8, 103–4–9 (1933); Va. Code, sec. 8–650 (1950).

Following the lead of Samuel Warren and Louis D. Brandeis, whose famous article The Right of Privacy,

4 Harv. L. R. 193 (1890) first used the phrase "right of privacy," distinguished writers have supported the recognition of the right. Larremore, The Law of Privacy, 12 Col. L. R. 693 (1912); Pound, Interests in Personality, 28 Harv. L. R. 343, 362–4 (1915); Winfield, Privacy, 47 Law Q. R. 23 (1931); Green, Right of Privacy, 27 Ill. L. R. 237 (1932); Nizer, Right of Privacy, 39 Mich. L. R. 526 (1941); Thayer, Legal Control of The Press, ch. 12 (1944); Feinberg, Recent Developments in the Law of Privacy, 48 Col. L. R. 713 (1948). In American Jurisprudence, Vol. 41, pg. 927, it is stated that the preponderance of authority supports the view that there is a legal "right of privacy," the invasion of which gives a right to a cause of action. This is likewise supported by articles in the American Law Reports, 138 A. L. R. 22, 168 A. L. R. 446, 14 A. L. R. (2d) 750, and by 54 Corpus Juris, 816, Right of Privacy (1931). The right is defined and approved in the Restatement of Torts, sec. 867.

Against this massive weight of authority there is pitted a small, largely inconclusive group of opinions written for the most part before the bulk of the cases upholding the right of privacy were decided. Only one of the cases cited as denying the existence of the right of privacy stands today as an unqualified precedent refusing to recognize the right. *Henry v. Cherry & Webb,* 30 R. I. 13 (1909). The others have all been overruled or limited. The case of *Atkinson v. Doherty & Co.,* 121 Mich. 372 (1899) has since been overruled with respect to its denial of recovery for invasions of privacy by *Pallas v. Crowley, Milner & Co., supra.* Within a year following the decision in the leading case denying the existence of a right of privacy, *Roberson v. Rochester Folding Box Co.,* 171 N. Y. 538 (1902), the New York legislature passed a law giving a right of action in advertising and trade situations such as the one presented by the instant case. New York Civil

Rights Law, *supra*. In *Lewis v. Physicians etc. Bureau,* 27 Wash. (2d) 267 (1947), the Supreme Court expressly stated that the question of the existence of the right of privacy was an open one in Washington, thus repudiating the language denying the existence of the right in the case of *Hillman v. Star Publishing Co.,* 64 Wash. 691 (1911). The case of *Judevine v. Benzies-Montanye Fuel & Warehouse Co.,* 222 Wis. 512 (1936) arose out of defendant's advertisement of the fact that plaintiff owed it a debt. The court denied plaintiff's claim that his right of privacy had been invaded. However, the court rested the denial on the ground that the legislature had acted with respect to the matter of debt collection by the passage of several statutes, and the opinion carefully limits its holding to the particular situation presented by the facts in that case. The right of privacy as such was not rejected. *Wright v. R. K. O. Radio Pictures,* 55 Fed. Supp. 639 (D. C. Mass., 1944), involved the application of the Massachusetts law by the Federal District Court under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U. S. 64. The court relied on *Themo v. New England Newspaper Pub. Co.,* 306 Mass. 54 (1940), for its statement that "there is no recognized right of privacy in Massachusetts." However, the *Themo* case cannot be interpreted so broadly. In that case the court rejected plaintiff's right of privacy argument by pointing out that whether or not such a right existed in Massachusetts, defendant's actions were apparently covered by a well recognized exception to the right, and hence the case did "not require [it] to decide whether any right of privacy is recognized by the law of this Commonwealth." The question of the existence of the right of privacy is not, therefore, settled in Massachusetts.

The foregoing are the cases generally relied upon as opposed to recognition of the right, and thus, the Rhode Island case of *Henry v. Cherry & Webb, supra,*

stands today as the only unrestricted holding flatly denying all parts of recovery for invasion of privacy. To our knowledge, no case decided during the last fifteen years has denied the existence of the right. Nizer in his article on the Right of Privacy, *supra,* says that the recent unpretentious recognition by the courts of the right indicates more than anything else that it has become firmly established in our law.

The leading case in support of the right is *Pavesich v. New England Life Insurance Co., supra.* There, defendant printed an advertisement using plaintiff's picture without his consent. The advertisement falsely stated that plaintiff owned some of defendant's insurance and was well pleased with it. Except for the added element of endorsement, the case is close to the facts in the instant case, and the broad language of the court clearly was intended to encompass cases such as the present one. The case of *Munden v. Harris, supra,* is practically indistinguishable from the instant case. Defendants' jewelry store had used a picture of a five-year-old boy in an advertisement without his consent. He sued, alleging that his right of privacy had been violated by the unauthorized use of the picture. The trial court sustained a demurrer. This action was reversed on appeal. The Appellate Court admitted that ''the right of privacy does not extend so far as to subvert those rights which spring from social conditions, including business relations. . . . In the nature of things, man in the social organization must be referred to and spoken of by others, and this may be done freely so long as it is free from slander. But,'' it continued, ''the difference between that right and a claim to take another's picture against his consent, or to make merchandise of it, or to exhibit it, is too wide for hesitation in condemning the act and granting proper relief.''

 Basically, recognition of the right to privacy means that the law will take cognizance of an injury, even though no right of property or contract may be involved and even though the damages resulting are exclusively those of mental anguish. A person may not make an unauthorized appropriation of the personality of another, especially of his name or likeness, without being liable to him for mental distress as well as the actual pecuniary damages which the appropriation causes. The right of privacy is, of course, limited in cases of express or implied consent and in areas of legitimate public interest. But no such limitations are relevant in the instant case. Plaintiff was not a public figure, she did not consent to have the picture used, and there was no legitimate news interest in her likeness. Also, the right of privacy is sometimes limited to commercial situations. However, we need not discuss this limitation, because the instant case involves unauthorized advertising use of plaintiff's picture and would be comprehended within the narrowest definition of the right of privacy.

The principal objection advanced to a legal recognition of the right of privacy is that when damages resulting from an unlawful act consist only of mental anguish, the law will not undertake to measure value and will not furnish redress. The common law, it is said, grants recoveries only for injuries either to the person or the purse and not for mere mental suffering. This reasoning no longer accurately portrays the state of the law. In many cases, some involving situations practically synonymous with those now covered by the right of privacy, defendants have been found guilty of technical violations of established contract and property rights where the only real damages sustained by plaintiffs were to their mental well-being. Relying on property rights, courts have restricted the

use that may be made of private letters by the recipients or third parties without the consent of the writers, *Gee v. Pritchard,* 2 Swans 403 (Ch. 1818); *Baker v. Libbie,* 210 Mass. 599 (1912); *King v. King,* 25 Wyo. 275 (1917) ; enjoined the public exhibition and cataloging of private etchings surreptitiously obtained by defendants, *Prince Albert v. Strange,* 1 Mac. & G. 25, (Ch. 1849); and given damages for mental suffering caused by tampering with corpses of deceased relatives, *Larson v. Chase,* 47 Minn. 307 (1891); *Koerber v. Patek,* 123 Wis. 453 (1905); *Mensinger v. O'Hara,* 189 Ill. App. 48 (1914). In *Klug v. Sheriffs,* 129 Wis. 468 (1906), defendant used pictures of plaintiff's deceased wife, given to him for other purposes, to paint a portrait of her. The court held that he acquired no property rights in the portrait because he had acted in breach of confidence. Courts have long recognized that when a photographer takes a person's picture, he impliedly contracts not to use the negative to print extra copies for his own use. *Pollard v. Photographic Co.,* L. R. 40 Ch. Div. 345 (1888); *Moore v. Rugg,* 44 Minn. 28 (1890); *McCreery v. Miller's Grocerteria Co.,* 99 Colo. 499 (1936). Carriers, innkeepers and other owners of public places have been held liable to patrons for mental distress caused by the insulting conduct of their agents. *Bleecker v. Colorado & S. R. Co.,* 50 Colo. 140 (1911); *Aaron v. Ward,* 203 N. Y. 351 (1911); *Emmke v. DeSilva,* 293 Fed. 17 (C. A. 8th, 1923).

Frequently, plaintiffs have been awarded substantial damages in traditional tort cases where damages to reputation, physical integrity or pecuniary interests were so slight that mental suffering must have been the real basis of recovery. Assault cases are based on an explicit recognition of the right to be free from mental disturbance. Prosser on Torts, sec. 10 (1941) and cases there cited. Substantial recovery is often

allowed where the battery is slight but mental suffering great. *Craker v. Chicago & N. W. Ry. Co.,* 36 Wis. 657 (1875); *Draper v. Baker,* 61 Wis. 450; *Brownback v. Frailey,* 78 Ill. App. 262. Mental suffering may also be the main basis for liability in a trespass case. *Johnson v. Hahn,* 168 Iowa 147 (1914); *Chicago & N. W. Ry. Co. v. Hunerberg,* 16 Ill. App. 387. False imprisonment cases often involve short detentions known only to the parties, and the substantial damages awarded must have been for injuries to feelings rather than for restrictions put on freedom or for injuries to reputation. *Gadsden General Hospital v. Hamilton,* 212 Ala. 531 (1925); *Cox v. Rhodes Ave. Hospital,* 198 ¿ Ill. App. 82. The award of damages in defamation cases is often based on mental suffering. *Howe v. Perry,* 15 Pick. (Mass.) 506 (1834); *Richardson v. Barker,* 7 Ind. 567 (1856); *McArthur v. Sault News Printing Co.,* 148 Mich. 556 (1907). Similarly, in criminal conversation cases, damages may be based on injuries to feelings where no loss of service or reputation is involved. Restatement of Torts, sec. 685; *Yundt v. Hartrunft,* 41 Ill. 9; *Browning v. Jones,* 52 Ill. App. 597. See also *DeMay v. Roberts,* 46 Mich. 160 (1881); *Muetze v. Tuteur,* 77 Wis. 236 (1890); *Schultz v. Frankfort Marine, Accident & Plate Glass Ins. Co.,* 151 Wis. 537 (1913); *Thompson v. Adelberg & Berman, Inc.,* 181 Ky. 487 (1918).

CALVERT MAGRUDER, now CHIEF JUSTICE of the Court of Appeals, First Circuit, concludes a lengthy analysis of the foregoing and other mental disturbance cases in the following language:

"All in all, it is fair to say that the courts have already given extensive protection to feelings and emotions. They have shown a notable adaptability of technique in redressing the more serious invasions of this important interest of personality. No longer is it even approximately true that the law does not pretend

301

to redress mental pain and anguish 'when the unlawful act complained of causes that alone.' If a consistent pattern cannot yet be clearly discerned in the cases, this but indicates that the law on this subject is in a process of growth.'' Mental Disturbance in Torts, 49 Harv. L. R. 1033, 1067 (1936).

The American Law Institute has now recognized the existence of a cause of action for mental distress *intentionally* caused. Restatement of the Law of Torts, sec. 46 (1948 Supp.). The Institute left open the question of liability for mental suffering caused by negligence or recklessness, pointing out that ''This is a part of the law of torts in which real developments have occurred in recent years, and this development is continuing. . . . There is a definite trend today in the United States to give an increasing amount of protection to the interest in freedom from emotional distress.'' Comment to sec. 46 (1948 Supp., Restatement of Torts).

■ Thus, objections to the recognition of the right of privacy stemming from the fact that damages for violation of the right are based on mental suffering are not well founded. In fact, in a discussion of the right of privacy published before the recent changes in Restatement of Torts, a leading authority and writer on torts said: ''It seems obvious that [the right] is only a phase of that larger problem of the protection of plaintiff's peace of mind against unreasonable disturbances; and if that 'new tort' of the intentional infliction of mental suffering receives general recognition, the great majority of the privacy cases may be expected to be absorbed into it.'' Prosser on Torts, sec. 107, pp. 1053–4 (1941). Far from being a brake on the development of the right of privacy, the law with respect to actions for the infliction of mental suffering threatens to surpass and absorb the privacy cases in its own expansion.

302

Defendants urge that the common law granted no right to recover for invasions of privacy and that this lack of precedent is fatal to plaintiff's cause of action. Speaking for the Georgia Supreme Court in *Pavesich v. New England Life Insurance Co., supra,* Justice Cobb stated that the right of privacy was founded on basic principles and was not new, except in the application of those principles to the facts of the *Pavesich* case. He traced the principles upon which the right was founded to the ancient conception of the Roman law of *injuria,* sometimes translated as "outrage." There are many examples of "outrages" which have been recognized by law and which are analogous to the instant case in principle. The ancient legal offense of jactitation is perhaps the closest approach to modern privacy suits. It included false boasting by an individual that he or she had married the plaintiff. In such cases the Ecclesiastical Law enjoined wrongdoers to perpetual silence and made them pay the costs. Cyclopedic Law Dict., 2nd Ed., citing 3 Bl. Comm. 93; 2 Hagg. Consist. 285, 423; 2 Chit. Prac. 459.

 But even if we grant defendants' point that the right of privacy has no foundation in ancient common law, it does not follow that we should deny plaintiff's right to recovery. To deny relief because of lack of precedent is to freeze the common law as of a particular date. In the comparative security and warmth of an era of peace and prosperity, the tendency is to cling to form and to cast a jaundiced eye on anything requiring adaptation. With changing times rigidity can often mean injustice. MR. JUSTICE HOLMES stated that sometimes courts are called upon to grant redress in a case without precedent for injuries resulting from conduct which universal opinion in a state of civilized society would unhesitatingly condemn as indecent and outrageous. He felt that in such a case the court should accept the view that the common law has a capacity

for growth and expansion and the ability to adapt itself to the principle that it can grant relief. Mr. Justice Cardozo expressed the same idea in ''The Growth of the Law,'' pp. 19–20, and used language even more apposite to the instant case in ''The Nature of the Judicial Process,'' p. 142. Like Holmes, he felt that where the controversy demands redress, and the law has left the situation uncovered by any pre-existing rule, there is nothing for the court to do except to declare what fair and reasonable men, mindful of the habits of life of the community, and of the standards of justice and fair dealing prevalent among them, ought, in such circumstances, to do.

Reviewing courts both in this country and in England have time and again extended relief in new cases where there was no substantial precedent to support the action. In modern times among the notable cases without precedent which have become part of the common law of the entire country are *MacPherson v. Buick,* 217 N. Y. 382 (1916), liability of suppliers to third parties for negligence in manufacturing, followed in Illinois by *Rotche v. Buick Motor Co.,* 358 Ill. 507; *Railroad Co. v. Stout,* 84 U. S. (17 Wall.) 657 (1873), attractive nuisance doctrine, followed in Illinois by *Deming v. City of Chicago,* 321 Ill. 341 (1926); and *Lumley v. Gye,* 2 El. & Bl. 216 (Q. B., 1853), liability for malicious interference with contractual relations, followed in Illinois by *Doremus v. Hennessy,* 176 Ill. 608. The development of multifarious types of real estate covenants stems from *Tulk· v. Moxhay,* 2 Phillips 774 (1848), which was a new departure by the English Chancery courts only a little over 100 years ago. In our own State, the Illinois courts in the last century were pioneers in the recognition of the now well established third-party beneficiary doctrine. *Eddy v. Roberts,* 17 Ill. 505; *Bristow v. Lane,* 21 Ill. 194.

Defendants argue that this court should follow the Rhode Island case of *Henry v. Cherry & Webb, supra,* because the statutory and constitutional scheme of Rhode Island which formed the basis of that decision is more like that of Illinois than is the legal background underlying the Georgia court's decision in *Pavesich v. New England Life Insurance Co., supra.* In view of the great accumulation of authority since the decision in the *Pavesich* case, it is unnecessary to examine with care the distinctions between these cases. However, we will undertake a brief analysis to show that the reverse of defendants' contentions is true.

There is little to choose between the relevant statutory and constitutional provisions of Georgia, Rhode Island and Illinois, guaranteeing to the residents of those states the right to protection of person and property. Illinois Constitution, art. 2, sec. 19; Rhode Island Constitution, art. 1, sec. 5; Georgia Constitution of 1877, art. 1, sec. 1, pars. 2, 4; Georgia Code of 1895, secs. 3807 & 4929. Illinois and Georgia have civil due process clauses in their constitutions, while Rhode Island's applies only in criminal cases. The Illinois Constitution guarantees "life, liberty, and the pursuit of happiness" as "inherent and inalienable rights." Art. 2, sec. 1. The Georgia court stated that the right of privacy was a natural right, constitutionally protected by the due process clause of the Georgia and Federal Constitutions. The Rhode Island court dismissed this argument, stating that Rhode Island recognizes no natural rights except those constitutionally protected and that the word "liberty" did not include the right of privacy. Illinois, with its explicit guarantee of due process in civil cases, is much more like Georgia than Rhode Island, and the natural rights' argument can be made with greater force here in view of article 2, sec. 1, of the Illinois Constitution quoted heretofore.

305

We have examined defendants' other contentions with respect to the count of plaintiff's complaint which is based on an invasion of privacy, and find them to be without merit. The complaint states a good cause of action for violation of plaintiff's right of privacy by defendants' unauthorized use of her picture for advertising purposes.

██ Plaintiff has a second count in her complaint, based on libel. The trial court's action in granting defendants' motion to strike and dismiss this count is well founded. Defendants were conducting an advertising campaign to promote sales of their dog food. They were running a prize contest through which purchasers of their product might aid the visually handicapped. The defamatory matter complained of consisted of advertisements containing plaintiff's picture with the captions, ''Dog owners your purchases of Perk Dog Food can give this blind girl a Master Eye Dog,'' or ''Help the blind own a Master Eye Dog.'' Plaintiff argues that the language indicating that plaintiff might receive a Master's Eye Dog when she already had one imputes fraud to her and might even be interpreted as indicating that she had conspired with defendants to obtain money from the public under false pretenses. Such interpretations are too speculative. Defendants' conclusion that the advertisements would be understood only as constituting an appeal for aid to the blind in general is the more probable. Where allegedly libelous matter is ambiguous, the court will interpret the matter innocently, if possible. *Fulrath v. Wolfe,* 250 Ill. App. 130; *LaGrange Press v. Citizens Pub. Co.,* 252 Ill. App. 482. Plaintiff's claim that the advertisements were libelous on their face cannot stand. Defendants' actions were not such that this court will presume damage to plaintiff's reputation without any showing of special damages.

Judgment reversed and cause remanded with directions to overrule the motion to strike Count I of plaintiff's complaint and to order defendants to answer.

*Judgment reversed and cause remanded with directions.*

TUOHY, P. J. and ROBSON, J., concur.